### San Antonio & Aransas Pass Railway Company v. Charles Lindsey.

Decided November 20, 1901.

**1.—Master and Servant—Contributory Negligence—Burden of Proof.**

In an action for damages by an employe for personal injury occasioned by defective appliances, the burden of proving contributory negligence is on the defendant.

**2.—Same—Duty of Inspection—Discovering Defects.**

The duty of inspecting a locomotive engine does not rest on the engineer, and he is chargeable with diligence in this respect no further than to know of defects in the engine which, in the prosecution of his work, he must necessarily have become acquainted with.

**3.—Same—Negligent Inspection—Finding Warranted.**

Evidence held to justify a finding that negligent inspection was the cause of injury to an engineer resulting from the step of the engine turning with him, —the last inspection having been made merely by kicking the step to see if it was loose.

**4.—Same—Duty of Inspection—Rule by Master.**

That the master may exonerate himself from the duty of inspection where the law imposes it, by a rule or by instructions that the servant shall exercise such duty, is doubted.

**5.—Same—Assumed Risk—Contributory Negligence.**

Where a locomotive engineer was injured by reason of looseness of the engine step, which might have been secured by use of dowel pin that was wanting, but of the absence of which plaintiff was ignorant and could not have learned without unscrewing the nut, which was apparently firm, he was not chargeable with knowledge of the absence of such pin, and could not be held as matter of law to have assumed the risk in using the step.

**6.—Same—Inspection—Assumed Risk.**

Where a locomotive engineer did not undertake, and was not chargeable with, the duty of inspection, the fact that he was provided with tools to make repairs to his engine, and that when he turned in his engine after a trip it was his duty to report defects he may have discovered, did not make him assume the risk with respect to injuries resulting to him from defects he had not discovered.

Appeal from Bexar.  Tried below before Hon. S. J. Brooks.

*Houston Bros.* and *R. J. Boyle,* for appellant.

*Price, Green & Green* and *Lewy & Schorn,* for appellee.

JAMES, CHIEF JUSTICE.—Charles Lindsey sued appellant on account of personal injuries received by him, alleging that he was employed by said railway company as engineer, and while in the act of alighting from his engine in the performance of his duties the step of the engine turned, which threw him to the ground, causing his injuries.

The defenses were general denial, assumed risks, and contributory negligence.  Verdict for plaintiff for $20,000.

The first and principal question presented is the refusal of the charge: "In this case the evidence is insufficient to entitle plaintiff to recover herein, and you will return a verdict for the defendant." This requires us to review the testimony in the light of appellant's proposition, which is: "The master is not an insurer of the safety of his servant, but is only required to exercise ordinary care to furnish him a reasonably safe place to work, and the law presumes that the master has met these requirements.  It follows, therefore, that the happening of an accident resulting in injury to a servant raises no presumption of negligence on the part of the master, and the servant seeking to recover for such injuries must establish by proof that the master was guilty of negligence and that he himself was not in fault but exercised due care."

The propositions embodied in the above may be put thus:  Plaintiff is required to prove negligence of the master; second, the absence of contributory negligence; and third, the proof of negligence must consist of something more than the mere happening of the accident.  We may eliminate the second of these by merely remarking that in cases like this the burden of proving contributory negligence is on the defendant.

To intelligently discuss the questions, the facts will have to be given and we do this as briefly as possible.  The trouble arose from the step becoming loose.  Plaintiff testified that after his fall he examined the step and described its condition thus: "The rod of the step which I stepped on went up through a casting; it is a rod about $1\frac{1}{2}$ inches in diameter which comes down from the back part of the cab, and about halfway from the cab to the footrest it goes through a thick heavy casting, and just above this casting there is a nut which screws down, and under the casting is a collar, and when the nut is screwed down tight

that draws the collar up tight and prevents it from being loose; I found it loose and there was nothing to prevent it from turning."

The evidence was certainly sufficient to show that the nut once becoming loose, the step was liable to turn when stepped upon. A device was shown, known as the dowel pin, which, if properly inserted, rendered the step incapable of turning, although the nut became loose; and it may be said to be a fact established by all the witnesses that if a dowel pin had been properly applied to the step, it would not have turned, although the screw may have been loose. There was testimony both ways as to the presence of a dowel pin on this occasion, and the jury would have been warranted in finding either way on this subject. That the step turned with plaintiff and he was thereby thrown, was shown by evidence.

The evidence seems to be clear upon the following facts: That plaintiff, on December 10, 1899, about 2 o'clock, came with this engine from Yoakum to San Antonio, about 120 miles (in switching, etc.), having occasion to use this step frequently on the trip. The step was firm when he left Yoakum, also when he reached San Antonio. At San Antonio he turned in a trip card reporting the condition of the engine, not reporting anything in respect to this step, as it was all right as far as he knew. This was on the morning of the 11th. In the afternoon of the same day he was ordered out again on this engine, and made an examination of the engine; it was all right as far as he could see, and the step was not loose. The accident occurred at the Guadalupe water tank, about nineteen miles from Yoakum. The last time he had occasion to use the step before reaching the tank was at Kennedy, and there "it was all right; it wasn't loose." It was loose at the tank, and turned with plaintiff and injured him. The engine had been in defendant's service a long time, at least since 1889.

As to inspection, we quote from the witness D. S. Hackett, who appears to have inspected the engine before it left San Antonio: "The last time I examined the condition of that step was the morning of the day the engine left. I have a distinct recollection of having examined the engine that morning, because I am in the habit of going through the roundhouse every morning and examining every engine that is there; I know that from my custom, and it was impressed upon my mind by the accident, and I was up and down on that engine several times that morning. There is nothing there to wear the threads of that nut; there is no pressure whatever on it. A nut gets loose on any bolt, and will naturally work around until it comes off; I don't know any reason why it should work around, unless the nut was loosened on there. I don't think the nut would be loosened without somebody loosening it, unless it was put on slacker than we usually put them on. I don't think using the step would have a tendency to make it work loose, unless it was very slack, and in that case you would discover it when you went to use the step. It is a very rare occurrence that engine steps get loose. The thickness of the iron through which the rod extends is about 4 1-2 or 5

inches. If it were to become incased in rust it would be all the tighter, but the rust itself would not hold the rod in place—the jar of the engine would throw that out. I state that the jar of an engine and the constant using of the step would not have a tendency to loosen the nut, if properly tightened up. It must have been tightened up well, if it was tight on leaving San Antonio. I did not examine that particular nut to see whether it was tight, but know it was, because I tried the step by kicking it. I remember having kicked this particular step that morning, because I make a practice of doing it a dozen times a day, and because of the injury to Mr. Lindsey, which drew my attention to that particular engine."

In reference to the use of the dowel pin, it was in evidence that the engines did not come from the factory equipped with same, but that defendant caused them to be attached,—there was evidence that defendant had been doing this five or six years previous to the trial, and that this engine was so equipped; but plaintiff testified that defendant did not begin using the device until after he was injured, and he testified that this step had no dowel pin, which fact he discovered after he was hurt, and he also denied that the appliance brought by defendant into court, which had the dowel pin, was the one that was on his engine.

In reference to safety of the steps with screw nut only for fastening, there was evidence that these engines were of standard make; that the turning of an engine step is a very rare and extraordinary occurrence; that this method of fastening steps was the usual one; and the inspector, Hackett, testified as above quoted as to the necessity of keeping the nut screwed tight, with respect to its safety.

As to negligence on the part of defendant: . If the step was without the dowel pin, its construction was such that the only respects in which defendant could have been negligent were in the inspection, and with respect to the dowel pin, the failure to equip this step with such a pin. That it was without this appliance is a finding that was sufficiently supported by testimony. From the standpoint of the verdict we must assume that such was the case.

The allegations of the petition charging negligence were sufficiently board to admit of plaintiff's availing himself of any character of negligence which the testimony developed to which the loose condition of the step could be attributed.

The evidence showed that such occurrences as the engine step becoming loose and turning were very uncommon, and could not happen as long as the screw nut remained firmly set; also that to all appearances the step was firm up to the station just prior to where the accident occurred, and had stood the test of use by both the fireman and this engineer, the latter being a stout man ("stouter than the fireman"). On the other hand it appeared that the engine had been in use a long time. Hackett, who inspected the engine before it left San Antonio, did not examine the nut to see if it was tight, but he said he knew it was, because he tried the step by kicking it. His testimony was that a nut gets

loose on any bolt and will naturally work around until it comes off; he knew no reason why it should work around unless the nut was loosened,— that he didn't think the nut would be loosened without somebody loosening it, unless it was put on slacker than they usually put them on; that he did not think using the step would have a tendency to make it work loose, unless it was very slack; and in that case you would discover it when you went to use the step; that he remembered having kicked this particular step that morning, because he made a practice of doing it a dozen times a day, and the injury to Lindsey that day drew his attention to that particular engine. The testimony does not indicate that any one tampered with the nut after the engine started on the trip.

Under these circumstances appellant insists that the cause of the nut becoming loose can only be conjectured, and can not reasonably be traced to any negligence of defendant. We may here remark that the duty of inspection did not rest on the engineer, and that he was charged with diligence in this direction no further than to know of defects in the engine which in the prosecution of his work he must necessarily have become acquainted with. Railway v. Hannig, 91 Texas, 351. If the step in use was firm or apparently so, the jury might well have exonerated plaintiff from contributory negligence in failing to notice a defect in the setting of the nut, and for the same reason have found also that it was not a risk that he assumed.

The evidence stated admits of certain inferences in respect to inadequate inspection prior to the engine being taken out. The engine had been in use many years, and it may be inferred from the fact that the only test the step was put to at San Antonio was by kicking it, which Hackett testified he was in the practice of doing a dozen times a day, that this was the customary manner of inspecting such step. Hackett admits he did not examine the nut to see if it was tight, and his testimony is to the effect that using the step would not have a endendy to make the nut work loose, unless it was slack, "slacker than we usually put them on." He testified also that a nut gets loose on any bolt, and naturally works around until it comes off. If it be true that nuts are naturally liable to become loose, and to work off in use, can it be said as a matter of law that it was a reasonable inspection to simply ascertain that the step was tight by kicking it, without giving any attention to the nut upon which the secureness of the step depended? If it be true that the nut would not become loose from use unless put on slacker than they usually put them on, is it not a reasonable inference from this and the fact that it did become loose, that it was to some extent slack when the inspection was had, or that if it had been properly tightened it would have remained safe during the trip? We think the jury would have been warranted in finding as the cause of the injury negligence of defendant in the inspection of the engine.

We have here this case upon these facts: That the screw became loose from some cause; that the cause was not an interference with the

nut during the trip; that a proper tightening of the nut before the engine went out would have prevented its becoming loose; that no attention was paid to the condition of the nut in the testing of the step by defendant's inspector; that the inspection consisted of kicking the step, which was apparently the usual test applied in such cases, when, unless the nut was securely made fast, it was apt to become loose. Under these circumstances we are of opinion that the way was open for the jury to find that the inspection was not reasonably sufficient, and that this led to plaintiff's injuries. We therefore think it unnecessary to attempt to apply in this case the rule of res ipsa loquitur.

It is also unnecessary to discuss the subject of negligence in respect to the dowel pin. The demand of the assignment under consideration are satisfied, so far as defendant's negligence as the cause of plaintiff's injuries is concerned, by what we have stated. From none of appellant's standpoints does the evidence, as matter of law, charge plaintiff with contributory negligence, or show that he assumed the risks attending the use of this step. Appellee insists that the facts that the dowel pin, properly inserted, practically removes all possibility of the step turning, that defendant knew this, and had them to use for several years before this occurrence, were sufficient to warrant a finding that appellant had in this instance not exercised reasonable care in reference to this step.

We pass over this question as immaterial to a decision, and will consider the matter of the dowel pin only in reference to the question of contributory negligence, or assumed risk. There was evidence that plaintiff did not know, prior to the accident, that this step was not equipped with such a pin; and as the evidence shows that the nut had to be removed or loosened to expose such pin to view, and as the duty of inspection did not rest on him, but he might presume that what was reasonably necessary to make it safe for him had been done by defendant, he was not chargeable with such knowledge, nor was the risk an assumed one, as a matter of law.

The case of Railway v. Hannig, cited above, clearly warrants the charges questioned by the second and third assignments. The Supreme Court has since uniformly adhered to the rule declared in that decision. The servant owes no duty of inspection. The fact that engineers are furnished with tools with which to make repairs during trips does not transfer the duty of inspection from the master to him.

The fourth assignment is not sustained, because the requested charges referred to were substantially given.

The only matter in connection with the fifth assignment which is open to discussion (because the court in substance embodied in its charge everything else that there is in the requested charge), is the propriety of charging the jury that if they found that it was plaintiff's duty to observe and know the condition of the step after it became loose, it was an assumed risk. We doubt the power of the master to exonerate itself

from its duty of inspection where the law imposes it, by a rule or by in-structions that the latter shall exercise it.   We have held in accordance with this view.   Railway v. Bookrum, 57 S. W. Rep., 919.

Be that as it may, the evidence here did not indicate that plaintiff un-dertook or was charged with the performance of any such duty.   He was provided with tools to make the necessary repairs to his engine, and when he turned his engine in after a trip, it was his duty to report any defect which he may have discovered.   This certainly did not make him assume the risk in reference to injuries he may have received from defects before discovery of them.

The sixth and seventh assignments allege that the verdict is without evidence to support it, and is against the great preponderance of the evidence.   What we have stated shows wherein we disagree with these assignments.

The remaining assignments complain of the refusal of a new trial on the grounds, first, excessiveness of the verdict; second, the manifest falsity of plaintiff's testimony; and third, that the jury disregarded the charges and the testimony in finding their verdict.   These assignments we must overrule.   The character of plaintiff's injury as shown by tes-timony will warrant the verdict as to amount.   The judgment is af-firmed.

*Affirmed.*

Writ of error refused.