## COLLINS *v.* SOUTHERN RAILWAY COMPANY.

1. "An employee [of a railroad company], being in the discharge of his duty, has the right to rely upon other employees doing their duty.   Any omission of ordinary and reasonable care by the coemployees of the plaintiff would be a violation of his right to the safety and security which the observance of such diligence would afford."   Hopkins on Personal Injuries, § 218, citing *Parker* v. *Railway Company,* 83 *Ga.* 539.

2. There was evidence from which the jury would have been authorized to find that at the time of receiving the injury complained of the plaintiff was in the exercise of due care and diligence; that he was free from fault, and that he was injured in consequence of a failure of his coemployees to exercise proper care and diligence; and awarding the nonsuit was error.

Argued January 22,—Decided February 16, 1906.

Action for damages.   Before Judge Hamilton.   City court of Floyd county.   March 13, 1905.

*Fouché & Fouché, M. B. Eubanks,* and *E. P. Treadaway,* for plaintiff.

*Shumate & Maddox* and *G. A. H. Harris & Son,* for defendant.

BECK, J.   Collins brought suit for damages against the Southern Railway Company, alleging in substance as follows: He was engaged by the defendant at its yards and shops as a car repairer, and on the morning of· the injury on account of which this suit was instituted he was directed by one Walker, defendant's chief car in-

spector, to assist two other employees of the defendant in placing a pair of wheels under a car which was on the "repair track" in the yard of the defendant. The plaintiff and his colaborers pushed the wheels across part of the yard to the "round-house track" and were endeavoring to place them thereon in order to roll them to the repair track; "petitioner had looked along the track to see if anything was moving on it, and, seeing nothing, he got upon the track and put his shoulder on a lever to raise up the axle and wheels and turn them around and let them down on the track. After petitioner and his immediate helpers had raised the axles and wheels and were supporting them on their shoulders an engine of the defendant came suddenly backwards along the track without giving any signal of its approach, and without any one looking out from said engine and without ringing the bell or sounding the whistle on said engine, and said engine ran rapidly and violently against petitioner and struck him on the small of the back and hips. The blow was so violent that it threw petitioner forward and astride the axle he was in the act of moving. Petitioner clung to said axle; and the engine, after striking him, continued to move backwards, pushing the wheels and axle along the track, and did not stop until the wheels and axle had been pushed about seventy-five feet from the point of collision, but petitioner, being in great danger and believing that he would be killed, with great effort succeeded in getting off the axle and clear of the track after being carried some ten or twelve yards, but he dropped on the ground and was unable to get up or to walk. He remained prostrate on the ground unable to walk until a hack was brought and he was helped up and lifted into said hack and carried to his home." He supported his petition by proof, testifying that the track upon which he was injured was the proper track on which to place the wheels in order to roll them to the repair track, and that this custom was known to the engineer in charge of the engine. He also testified that about fifty engines crossed over said track every day, and that he was aware of the fact that the engine which struck him would probably be along about the time he placed the wheels on the track; but he said, that, "by the universal practice with reference to bringing engines from the main lines on to the side-tracks there, there generally came a man right along behind them if they were backing in, or ahead of them if they heading in, to throw the switch and

carry them into the round house." He further testified that he looked up the track just before he put the wheels on it, and saw no engine; that he could see up the track about a hundred yards; that the engine which struck him was running at a rate of fifteen miles an hour, which was an unusual and unreasonable rate of speed; "if the engine was coming with any reasonable speed, from the time I looked, it could not have hit me." At the conclusion of plaintiff's testimony the court granted a nonsuit, and he excepted.

Taking the evidence most strongly in favor of the plaintiff, as we must do in passing on the question as to whether or not the court rightly awarded the nonsuit, we hold that the court erred in ruling as a matter of law that under no reasonable view of the evidence was the plaintiff entitled to recover. As the case is to go back for another trial, we will not discuss the evidence further than to say that there was sufficient testimony to warrant a finding by the jury that the plaintiff, at the time of sustaining the injuries complained of, was rightfully on the round-house track and engaged in the discharge of duties that devolved upon him by virtue of the task that he was properly undertaking to perform; furthermore, that a coemployee of the plaintiff was guilty of negligence and of a failure to exercise ordinary care and diligence which a proper regard for the safety of other employees demanded that he should exercise, in running the engine backward at an unreasonably high rate of speed over tracks where workmen engaged in the railway's service might be expected at any time to be employed. The question as to whether or not the plaintiff was in the exercise of ordinary care and diligence at the time of his injury was a question of fact for the jury, under proper instructions from the court; and the question as to whether the mere fact that he did not keep his eyes fixed or constantly turning in the direction from whence the engine came which inflicted the injury amounted to a lack of ordinary care and diligence must also be left for determination by the jury. It certainly can not be decided by a court, as a matter of law, that it is negligence upon the part of a laborer, who has upon him an immense physical burden that taxes his strength to the uttermost, if, for a few moments, or "a minute or two," he permits himself to become engrossed in his task and oblivious to possible dangers. The court would have no more right, under such circumstances, to hold that one thus becoming engrossed in his task was

not in the exercise of diligence than it would to say, as a matter of law, that becoming so engrossed and absorbed in his work as to forget the dangers that surround him in such employment is not negligence, or does not constitute lack of diligence and care. Instead of deciding these facts the court must refer them to the jury. "Laborers engaged in track work are not held to the same degree of care as to approaching trains as governs travellers crossing railways. A track-repairer required to keep a constant lookout for approaching trains in both directions would have little time to devote to his duties, and this degree of diligence is not required; on the contrary, it has been held that he has a right to become engrossed in his labor to such an extent that he may be oblivious to the approach of a train." 5 Thomp. Neg. §5522. The plaintiff in this case was not a track-hand; but if his version of the occurrence is to be received as true, he was as rightfully on the track where he received his injuries as if he had been engaged in repairing the track. The fact that he was frequently at or near this same place was generally known, according to his testimony, which was in the following language: "They have a signal flag for the repair track, . . but on this track [round-house track] we sent nobody out to put up any signal, and it never has been done since I have been there; that is our usual place to work, and they look out for us generally. We had to roll trucks across that track, sometimes as high as six or seven times a day, and sometimes nary one. We worked right around there and across there all the time; we couldn't get the wheels out no other way; it was usually known and everybody knowed it." Certainly we can not agree with the trial judge that the jury would not have been authorized to find, under all the testimony that had been submitted when the plaintiff closed, that the plaintiff himself was in the exercise of due care and diligence; that he was free from fault; and that his injury was brought about by the negligence of his coemployees and a want of due care and caution upon their part.

<div align="center">

*Judgment reversed. All the Justices concur.*