## GEORGIA RAILWAY & ELECTRIC CO. *v.* WHITE.

1. The verdict was contrary to the evidence and without evidence to support it, and a new trial should have been granted on that ground.
2. There was no error in overruling the general demurrer to the petition.

SEPTEMBER 26, 1911.

Action for damages. Before Judge Pendleton. Fulton superior court. April 12, 1910.

*Colquitt & Conyers,* for plaintiff in error.

*James L. Key, Reuben R. Arnold,* and *Lamar Hill,* contra.

BECK, J. R. W. White brought suit against the plaintiff in error to recover damages for personal injuries alleged to have been sustained by him on October 4, 1906. The plaintiff alleged, that on the date named he was in the employment of the defendant company as conductor; that he had never practiced as motorman, and was not skilled in the operation of a motor or well acquainted with the method of operating the same; that a car was due to leave Atlanta at 1:45 in the morning, which went out Decatur street, and out to the Soldiers' Home junction; that there was no motorman to run the car, and the plaintiff was ordered by one of defendant's agents, acting with authority of the superintendent, to run said car both as motorman and conductor; that plaintiff had never been warned of the perils of running a car as motorman, nor been given sufficient opportunity or practice to run a car with skill as motorman, or to know or understand the speed of a car; that while proceeding out Decatur street, at the rate of five or six miles an hour, plaintiff reached a switch or turnout from the Decatur street track at the intersection of Piedmont avenue; that this Piedmont avenue track is not a track used by regularly scheduled cars, but used at irregular intervals, and by construction cars mostly, going to defendant's power-house to load or unload equipment, and the like; that, under the defendant's practice and custom, the switch at the intersecting turnout at Piedmont avenue was not one at which motormen running on the Decatur street main line were required to stop and to turn it before proceeding, but, being required to remain turned to the main line, motormen could run over it upon the assumption that the same was always turned to the main line; that, upon the occasion and night in question, a car of the defendant in charge of defendant's employees had used said switch in going into said turnout, but had negligently failed to turn the same back to

the main line, and when the same was left open it was a dangerous obstruction to cars coming down Decatur street; that the defendant was negligent in the construction and maintenance of said switch, in that the same should have been equipped with a block of rubber or other substance which would keep the switch automatically turned to the main line when not in use, it being alleged that rubber blocks and electrical automatic contrivances were in common use in keeping switches turned, and that ordinary care required the use of the same, which, after said switch is turned or used, would automatically throw it back to the main line.   It was alleged that while the plaintiff was so proceeding with the car out Decatur street the car struck said open switch, this condition being unknown and invisible to plaintiff in the exercise of ordinary care; and that the car was suddenly turned from the main-line track into the Piedmont avenue track, throwing him off the platform of the car upon the ground, seriously and permanently injuring him.

The defendant filed a general demurrer, which was overruled, and defendant excepted.  Upon the trial of the case a verdict was rendered against the defendant; the court having overruled a motion for a nonsuit, made at the conclusion of the plaintiff's evidence. A motion for a new trial was overruled, and the defendant excepted.

1.  A new trial must be granted in this case, on the ground that the verdict is contrary to the evidence and without evidence to support it.   The testimony of the plaintiff himself shows that he voluntarily undertook, in the capacity of motorman, to run the car from which he was thrown, out Decatur street to the point to which it was destined on that particular run.   He was at that time in the employment of the defendant company as a conductor, but he had had sufficient experience as a motorman to enable him in that capacity to operate the car.   The plaintiff himself testified: "I went the regular schedule for the crew.  Yes, sir, I took that car to run it as motorman that night.  Yes, sir, they waited until he could see if he was going to come, and he didn't come; that is, waited for the motorman to come.  I reckon we waited fifteen or twenty minutes. . . He asked me, and I told him I didn't see nothing of him.  After waiting about fifteen minutes, I went and told him that the motorman hadn't come.  He asked me could I run the car. and I told him I thought I could run it.  No, I didn't

ask him to let me go and run it; he just said to go ahead and take the car. What I told him was, 'I think I can run the car;' wasn't nothing much said about it; just told him that he hadn't come, and the boys wanted to go home, and he asked me if I had a motorman to carry it out. Yes, sir, I told him I thought I could run a car, and he told me all right, to go ahead and run it; that's just about all that was said. . . I told the man down there that I could run the car all right." It also appeared from the plaintiff's testimony that he was familiar with the route over the Decatur street line and over the switch at which he was hurled from the car. He had passed over that switch many times. He knew the character of the switch and its exact location. It is true that during the week or so when he ran over the line passing the particular switch in question, he had not seen motormen stop the car for the purpose of adjusting the switch; but that fact does not negative the other fact—of his knowledge as to the location and character of the switch. The switch was not unusual in its character; it was of a kind with the other switches on the lines upon which the plaintiff had run as a conductor for a year or more, being one that was adjusted by a switch-stick. On the lines with which the plaintiff was familiar there were but few, if any, automatic switches or switches fitted with a rubber block. The plaintiff further testified: "I did not know any rule with reference to whether any switch at Decatur and Piedmont [the point at which the switch in question was located] was to be open or shut. I didn't know any of the motorman's rules. I know nothing about whether that switch was to be open or closed, and nothing about the switch at the corner of Piedmont avenue and Decatur street [the switch last above referred to]. I don't know whether that was to be open or closed, nor how that switch was to be left, or how it was. I knew there was a switch there; I knew there was a track down there. I started my car a block back from that thing. I just started up there, and, without decreasing my speed any, ran it on down as far as the switch, and then ran it into the switch, and it throwed me out. I knew no rule with reference to that switch." It was also in the testimony given by a witness for the plaintiff, that "Those switches like that one down there on Piedmont avenue could be used with the application of very little force and exchanged from one line to the other, with the switch-stick. They were moved, frequently, by other force

than the switch-stick, they were moved by wagons. A wagon comes down the rail and the wheel strikes the switch-tongue and throws it over. If a wagon does that running down there, down the curve of the switch, and turns it the wrong way, and a motorman approaches it. he stops and throws it the right way, the same as if another car had used it and left it in that condition. That is not an extremely rare thing where wagons do that; that is pretty often. . . If there had been a rubber in it the wagon couldn't have turned it."

When it is remembered that the plaintiff himself was in sole and complete control of the car; that he was running it over a track with which he was familiar, over a switch of which he knew the character and location; that he ran his car, without decreasing his speed, into this switch,—there can be but one conclusion reached, and that is that the plaintiff himself, by a failure to exercise due care and caution, brought upon himself the injury of which he now complains, but of which he has no ground of complaint as against the defendant company. There are other facts in the record strongly tending to show that the plaintiff himself was grossly negligent in running into the open switch, but we have stated only those facts which are uncontroverted and came from the plaintiff or his own witnesses; and under them the plaintiff is not entitled to recover, and the court erred in not granting a new trial upon that ground. Having so held, it is unnecessary to deal with the special assignments of error contained in the motion for a new trial.

2. There was no error in overruling the general demurrer to the petition.        *Judgment reversed.   All the Justices concur.*