### 3394. WALLACE *v.* SOUTHERN RAILWAY CO.

1. Where the jury can reasonably infer, from the evidence, that an allegation of negligence which would authorize a recovery has been proved, a nonsuit should not be granted.

2. The presumption of negligence against the employer "in case death results from injury to the employee," created by the act of 1909 (Acts 1909, p. 160), is a part of the integral right to recover, and is not alone a rule of evidence, and is applicable only to causes of action arising subsequently to the passage of the act in question.

DECIDED NOVEMBER 7, 1911. REHEARING DENIED NOVEMBER 20, 1911.

Action for damages; from city court of Atlanta—Judge Reid. September 1, 1910.

*Burton Smith, R. W. Crenshaw,* for plaintiff.

*McDaniel & Black,* for defendant.

HILL, C. J. Wallace was employed by the Southern Railway Company as a switchman, and on or about October 26, 1906, in the early part of the night, and while engaged in the discharge of his duties, he was killed by the running of an engine operated by the railway company. His widow brought suit to recover damages for the homicide. At the conclusion of the plaintiff's evidence a nonsuit was granted, and to this judgment she excepts. Illustrating the question of nonsuit, there are also two special assignments of error on the admission and rejection of testimony.

This is the second appearance of the case before this court on an assignment of error to the judgment awarding a nonsuit. When first here, this court held that the plaintiff failed to show a prima facie case of liability, and consequently affirmed the judgment. *Wallace* v. *Southern Ry. Co.,* 6 *Ga. App.* 526 (65 S. E. 299). There is some substantial difference between the allegations of negligence in the first and second petitions, but very little, if any, material difference in the evidence in support of the allegations on the two trials. In a judgment awarding a nonsuit, as nothing is decided except the sufficiency of the evidence presented in support of the allegations in that particular case, it is not deemed necessary to call attention to any difference between the allegations and evidence in the present case and in the first case. We shall only consider and decide as to the correctness of the judgment, under the allegations and the proof offered in support thereof, on the question of liability in the case sub judice. The employment by the railway company of the husband of the plaintiff as a switchman,

and the fact that he was killed in the discharge of his duties by the engine of the railway company, were not controverted, and the only question for the determination of this court relates to the issue of negligence, under the allegations of the petition and the evidence for the plaintiff.

The allegations on the subject of negligence are as follows: "In the course of his duties, deceased was switching cars in [Fulton] county, near Armour . . at said time and place deceased threw a switch [in front of the engine] and gave a signal to the engineer to move forward. Immediately upon his giving the signal, and just as the engine was in the act of starting, a great volume of steam gushed out, surrounding the engine in every direction, and enveloping the deceased. The engine continued to advance, and ran over the deceased and killed him. . . It is impossible for plaintiff to give any of the details from the time the steam enveloped her husband until his mangled body was found in the rear of the engine." She alleges that "the escaping steam obscured the vision of the deceased, and was so opaque that he could not see through it, and, furthermore, it stung and blinded his eyes, and it was impossible for him to see, or know direction, or tell in which direction the engine was, or in which direction he should go, or save himself in any way. She does not know and can not say whether the engine struck the deceased while he was trying to escape from it, or exactly how it happened." In this connection it is further alleged that, "some time before the death of the decedent, the defendant knew the condition of this engine, had promised to repair it repeatedly, and had had it in the shop for that purpose," but, "notwithstanding this, they sent it out to be used for yard purposes, when the character of the work made it essential that the engine should start and stop properly;" that the decedent was killed on the very night of the day that the engine came from the shop, and he had no chance to know its defective condition; and, under these circumstances, it is insisted that the decedent was relieved from any assumption of risk. She charges that "the escaping steam and the action of the engineer in moving the engine while the deceased was endangered," as described, "were the real and proximate cause of his death." She charges that "the valves of said engine around the piston rods, and also the steam chest and cylinders, were leaking

badly," that by proper examination and repairs this defective con-
dition of the engine could have been discovered and repaired, and
that the defendant was negligent in failing to make a proper in-
spection and in failing to correct these defects; and she further
charges that it was negligence to operate the engine in such defect-
ive condition, and, under these circumstances, it is insisted that
the decedent was relieved of any assumption of risk.

These are substantially the allegations of negligence, and they
may be divided into two grounds:    (1) the negligence of the rail-
way company in failing to inspect and repair the defects in the
engine, and in knowingly using the engine in this defective con-
dition; and, (2) the negligence of the engineer in continuing to
move forward his engine after he had received the switchman's
signal to move forward, when he discovered that the escaping steam
had so enveloped the switchman as to make it impossible to ob-
serve his location on the track in front of the moving engine.

1.    In support of the first allegation of negligence, the evidence
is not controverted that the engine was in a defective condition as
described; nor is it denied that the defendant company knew of this
condition, or by proper inspection could have found it out; and
an inference of negligence was reasonably deducible from the facts
in evidence.    We think, however, as to this the deceased switchman
had assumed the risk.    The evidence is clear that his opportunity
for discovering the defective condition of the engine was as good
as that of the master, that he had been working as a front switch-
man on this engine in the yards of the company from 6 o'clock in
the morning until the time when he was killed, and the evidence
shows that this engine had been leaking badly during this whole
day, up to the very time of the accident, and that everybody con-
nected with this engine and its operation could not possibly have
failed to see the escaping steam and have knowledge of the de-
fective character of the engine.    The deceased switchman therefore
knew, or in the exrcise of ordinary care in connection with the dis-
charge of his duties as a switchman could have known, that the
engine had not been fixed, although it had been in the shop for that
purpose, that it was defective, that the steam did escape whenever
the engine started, that he fully realized his danger in connec-
tion with the escaping steam, and that, notwithstanding this knowl-
edge, he continued his work.    We think it clear, therefore, that

he assumed the risk resulting from the defective condition of the engine, and that as to this ground of negligence he was not entitled to recover.

Illustrating the second allegation of negligence, the evidence shows, or it is reasonably deducible therefrom, that the switchman, in the proper discharge of his duty and for the proper signaling for the engineer to start forward, crossed the track a few feet in front of the engine, "to the engineer's side, and gave the signal for the engineer to start forward;" that the manner in which this was done by the switchman was the customary and proper way to do it; that the engineer saw the signal and immediately started the engine forward; that the steam rushed out suddenly "in a great volume," and completely enveloped the switchman, and hid him from the engineer's view; that as the steam enveloped the switchman, the light of his lantern immediately went out; that the engineer saw that the switchman was thus enveloped, and saw that he was standing on the track when he gave the signal; that he knew that it was customary for switchmen, after giving signals of this character, to get upon the moving engine; that, seeing this perilous position of the switchman, it was the engineer's duty to stop his engine until the vapor should have been dissipated, and he, the engineer, enabled to see the exact location of the switchman, and the switchman allowed without danger to himself to get upon the moving engine; that, notwithstanding these facts, he continued to move his engine towards the place where the switchman was last seen standing on the track, and the evidence is that he could have stopped his engine "in 4 or 5 feet," but that he did not stop the engine for 90 feet from where he struck and ran over the switchman.

We do not mean to say that on these issues the evidence is altogether in favor of the contention of the plaintiff, for it is insisted by learned counsel for the railway company that the only reasonable deduction from the evidence is that the switchman was not on the track in front of the engine when he gave the signal for the engineer to start, but that he had passed over the track, and was standing off the track, in front of the engine, on the ground, in a position of safety and, himself seeing the enveloping steam, and realizing that it would be unsafe for him in that condition to attempt to step on the track, he nevertheless endeavored to do so;

that instead of waiting until the steam passed away, or until the engine stopped, to get upon the engine, he, notwithstanding the dangerous situation, through his own negligence attempted to get upon the engine, and in this manner met his death, and, therefore, that his own negligence was the proximate cause of his death. Under the evidence it is not clear how the switchman was killed. It does not disclose that he attempted to get on the engine while it was moving. He may have been walking on the track in front of the engine, and his feet may have caught in the frog of the track, and he may have been thrown, and in that position may have been run over and killed. Neither is it clearly shown that he was standing on the track in front of the engine when he gave the signal, but it is fairly issuable from the evidence that he was so standing. The uncertainty as to these questions should be left to the solution of a jury. It is not so conclusive that as a matter of law it can be held that the negligence of the deceased caused his death, or that by the exercise of ordinary diligence he could have avoided the negligence of the engineer in continuing to move his engine under the circumstances. It can not be doubted that the questions whether the engineer was guilty of negligence in moving forward his engine, notwithstanding he saw the perilous situation of the decedent, and whether, if the engine was so moved forward, this was the cause of the killing, are, under the evidence and inferences fairly deducible therefrom, at least issuable, and can not certainly be determined as questions of law. On this allegation of negligence, under the evidence, our minds are in a condition of uncertainty and unrest, and we prefer to leave the question to be solved by the jury, where, if issuable at all, the law places the responsibility of solution.

2. Learned counsel for the plaintiff contends that the act of 1909 (Acts 1909, p. 160) is applicable to this case. He concedes that it could not be applicable if the question involved a right to recover, because it would be retroactive in character, as the homicide occurred in 1906; and he insists that the presumption of negligence created by this act, from certain facts, is a rule of evidence, and, as such, would apply to any cause of action arising after the passage of the act. The general rule of law which counsel states is undoubtedly correct, that the legislature has power to make rules of evidence, and presumptions are ordinarily rules of evi-

dence, applicable to causes of action which have accrued prior to the passage of the act. In this case, however, the act expressly provides that it is applicable only to causes of action arising subsequently to its passage, and the act is intended to modify the extreme hardship of the statute which prohibited an employee from recovering damages unless he himself was absolutely faultless in connection with his injury. The act does provide that in case death results from an injury to an employee, a presumption of negligence is thus raised which must be rebutted by the employer; but this presumption constitutes an integral part of the *right* to recover, and can not have a retroactive effect. In *Louisville & Nashville R. Co.* v. *Bradford,* 135 *Ga.* 522 (69 S. E. 870), it is expressly held that causes of action arising prior to the act of 1909, supra, are unaffected by its provisions, and that an instruction which the trial judge in that case gave to the jury, to the effect that the presumption of negligence created by the act did apply to a cause of action arising prior to its passage, was erroneous. This seems to settle the question, and really renders unnecessary an opinion by the court on this point. However, under the statute as it stood at the time of the homicide, when the plaintiff proved the negligence of the engineer, this cast the burden on the railroad company of proving the contributory negligence of the employee.

The assignments of error as to the rulings on evidence are conceded by counsel for plaintiff not to be controlling or material, and, as they may probably not occur on a second trial, it is not now necessary to decide them. We reverse the judgment awarding a nonsuit in this case, solely on the ground discussed in the second division of the opinion.                    *Judgment reversed.*