### 3261. BUTLER v. ATLANTA BUGGY CO.

It appearing, from the evidence in behalf of the plaintiff, that, even conceding that his employer was guilty of negligence, as alleged in the petition, in furnishing him a defective instrumentality with which to do his work, his opportunities of discovering. this defective condition were equal if not superior to those of the employer, and that this defective condition was patent to superficial observation, and was in fact observed by the plaintiff before he was injured by his voluntary use of the defective instrumentality, a nonsuit was properly granted.

DECIDED DECEMBER 19, 1911.

Action for damages; from city court of Atlanta—Judge Reid. November 29, 1910.

Butler sued the Atlanta Buggy Company for damages on account of personal injuries. The court overruled a demurrer to the petition, and, after the introduction of testimony for the plaintiff, granted a nonsuit; and the latter judgment is here for review. The allegations of the petition are in substance as follows: Butler was an employee of the defendant as a woodworker, and had been so employed for over two years, and while he was at work endeavoring to saw a piece of wood with a rip or buzz saw furnished him by the defendant for that purpose, his left hand was jerked against the saw, and two of his fingers were cut off, and he was otherwise injured. He alleges that the saw was not in a proper condition to be used, because several of the teeth were improperly set; that is, some of the teeth were bent more than the others. This defective condition caused the plank that he was pushing against the revolving saw to jerk back, and, when these imperfect teeth came against the plank, his hand was jerked against the saw. He did not know of the defective condition of the saw, and had no opportunity of discovering its defective condition before he used it, and he was not guilty of negligence in attempting to use it in this condition. The defendant had an employee whose duty it was to keep this saw in proper condition, and this duty had not been discharged, and an inspection by the defendant through this employee would have discovered this defective condition of the saw. It is alleged that the employer was negligent in failing to furnish the plaintiff with proper machinery with which to work; that in its improper and defective condition the saw was not a safe instrument for him to use at his work.

The plaintiff proved his employment, the nature of his work, and that several of the teeth of the saw he was using were set out more than the other teeth; that the defendant kept an employee whose duty it was to keep the machine and tools in proper condition, and that while the plaintiff was attempting to use the saw, being ignorant of its defective condition, his hand was thrown against the saw; that at the time he received the injuries he was pushing a piece of plank about 18 or 20 inches long, 5 or 6 inches wide, and three fourths of an inch in thickness, against the revolving saw, for the purpose of having it cut or ripped; that the plank lacked only

about 5 inches of being sawed or ripped through, and while he was pushing the timber against the saw the piece of timber would rise up and not go through, and it became necessary for him to put his hand around the saw to hold down the timber; that, just as he got the plank or piece of timber almost cut through, the saw raised or jerked the plank, and his hand was thus thrown against the saw and injured; that he was sawing the plank in the usual and proper way, and the reason the plank rode the saw and jerked his hand against it was "because one of the teeth of the saw, that was bent too far out, instead of going through the slot which had been sawed in the plank, struck the plank by the side of the slot," thus raising the plank up and throwing his hand against the saw. The saw was about 12 inches in diameter, and revolved towards the plank where the timber was pushed against it. It was set in a table having a steel top, and almost a half of the saw revolved above the surface of the table. The timber to be sawed was pushed along the surface of the table to the saw.

The plaintiff himself testified that he had been working as an employee of the defendant for about two years, and that in connection with this work he made constant use of the saw in question; that he was an experienced workman; that he did not notice the condition of the saw on the day of his injury, and was doing his work that day in the proper and usual way; that it was necessary for him to put his hand in front of the saw to hold the plank down, as it flew up, in order to get it through the saw; that it was a piece of hard oak timber; that he was using a guide or gauge for the purpose of having a straight line sawed, and that a guide would keep the line straight if it was a good one, but this guide "would just wobble about;" that it was not of any account, and this made crooked the line he was endeavoring to saw; that he saw the guide "wobble;" that there was no way to tighten it, and that he went on and did the best he could with the "wobbly guide," because he had not noticed its imperfect condition until after he had started sawing the plank; that he saw that one of the teeth was bent too far out, but could not tell upon which side of the saw the bent tooth was; that he discovered the condition of the saw on that day, and before he was injured, and he had not seen the saw since that day. A fellow workman, who testified in behalf of the plaintiff, described the manner in which the

plaintiff's injuries were received, about as detailed by the plaintiff, and testified as to the condition of the teeth of the saw, stating that he did not give the saw a close examination, but "just glanced at it, and saw that the teeth were irregular;" that he made a further examination of it after the injury occurred, and "it was in about as good condition as they generally ran it."

*Moore & Branch,* for plaintiff.

*Smith, Hammond & Smith,* for defendant.

HILL, C. J.   (After stating the foregoing facts.)   The evidence, even when considered most favorably for the plaintiff, fails to show that he successfully carried the burden which the law imposed upon him.   It was incumbent upon him to prove, not only that the defendant was guilty of negligence as alleged in the petition, but that he himself was free from fault.   The evidence leaves it doubtful whether the plaintiff's injuries resulted in fact from the defective condition of the saw as described.   His fellow servant, who testified as to the condition of the saw, said that "it was in about as good condition as they generally ran it."   If this was true, its defective condition could not have furnished a basis of liability on the part of the defendant, in view of the fact that the plaintiff was an experienced workman, and had been for over two years familiar with the saw as it was generally used by him in his work. But, even conceding that the saw was in a defective condition, and that it was the duty of the defendant to have had it inspected and to have remedied these defects, yet these things alone would not have entitled the plaintiff to recover.   The law raises an implied warranty on the part of the master that he will keep and maintain the instrumentalities with which his employees are required to work free from any hidden defects, so far as he knows or in the exercise of ordinary diligence can anticipate or discover.   It also implies an agreement on the part of the servant to assume the risk of all dangers that are within his knowledge, or can be discovered by him in the exercise of ordinary diligence on his part.   The obligation is mutual.   The degree of diligence is the same, and, before a recovery can be had, the servant must show that the master violated his implied obligations, while he himself fully performed the obligation which the law imposed upon him.   This principle is well settled and is universal, and this court, as well as the Supreme Court of Georgia, has made many decisions emphasizing the rule

of mutual obligation which the law imposes upon both the employer and the employee. Some of these decisions pertinent to the facts of the case sub judice are *Brown* v. *Rome Foundry Co.*, 5 *Ga. App.* 143 (62 S. E. 720) ; *Attleton* v. *Bibb Manufacturing Co.*, 5 *Ga. App.* 777 (63 S. E. 918) ; *Flury* v. *Hightower Box & Tank Co.*, 132 *Ga.* 300 (64 S. E. 72) ; *Hendrix* v. *Vale Royal Mfg. Co.*, 134 *Ga.* 712 (68 S. E. 483) ; *White* v. *Kennon*, 83 *Ga.* 343 (9 S. E. 1082) ; *Ingram* v. *Hilton & Dodge Lumber Co.*, 108 *Ga.* 197 (33 S. E. 961) ; *Smalls* v. *Southern Ry. Co.*, 115 *Ga.* 137 (41 S. E. 492) ; *Manchester Mfg. Co.* v. *Pope*, 115 *Ga.* 542 (41 S. E. 1015) ; *DeLay* v. *Southern Ry. Co.*, 115 *Ga.* 934 (42 S. E. 218) ; *Worlds* v. *Georgia R. Co.*, 99 *Ga.* 283 (25 S. E. 646) ; *Zipperer* v. *S. A. L. Ry.*, 129 *Ga.* 387 (58 S. E. 872).

The whole law on the subject, however, is comprehensively and clearly stated in the two sections of the Civil Code of this State. Section 3130 of the Civil Code (1910) declares: "The master is bound to exercise ordinary care . , in furnishing machinery equal in kind to that in general use, and reasonably safe for all persons who operate it with ordinary care and diligence. If there are latent defects in the machinery, or dangers incident to an employment, unknown to the servant, of which the master knows or ought to know, he must give the servant warning in respect thereto." Section 3131 declares: "A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself. In suits for injuries arising from the negligence of the master in failing to comply with the duties imposed by the preceding section, it must appear that the master knew or ought to have known . . of the defects or danger in the machinery supplied; and it must also appear that the servant injured did not know and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof." When we apply these sections of the code, which simply embody well-settled principles of law, to the facts proved by the plaintiff, even conceding that the master may have been negligent in furnishing to him a defective saw with which to do his work, it is perfectly obvious that this defective condition was either actually or constructively known to the plaintiff. His own witness testified that he discovered the defective condition by a mere glance at the saw. The plaintiff was an experienced work-

man.  He had worked with this identical saw repeatedly.  He had been working with it that very day.  According to his testimony he did actually notice that it "wobbled" and was not proceeding in its normal way.  If his coemployee, by a glance, discovered that its teeth were deflected from their normal position, could not the plaintiff, when he was about to use it, and was actually using it, also have seen its defective condition, which he described, and which he says caused his injuries?  Indeed, he must have seen it, because he fully described its condition, and testified that he did not see the saw for months after his injuries.  His own evidence affirmatively shows that he not only had an equal opportunity with the master to discover the defective condition of the saw, but had a better opportunity than the master to make this discovery.

Learned counsel for the plaintiff insists that, as a general demurrer had been overruled, his right to recover, if he proved the allegations of his petition, was settled.  But did he prove the allegations of his petition?  The principal allegations of his petition, on proof of which alone he was entitled to recover, were that the saw was defective, that its defective condition was unknown to him, and that this condition could not have been known to him by the exercise of ordinary diligence and care.  It was necessary for him to show these things, even after he had proved that the master was guilty of negligence in furnishing him a defective tool with which to work.  But the evidence in his behalf utterly fails to show this.  A faithful employee, who is injured in the zealous service of his master, is entitled to compensation for any injuries that he may receive, caused by his master's negligence, and which could not have been avoided by him in the exercise of ordinary care and prudence; and this court will not be diligent to detect the negligence of a faithful and zealous servant.  But where that rule of justice, to wit, the rule of mutual obligation, is clearly violated by the failure of the servant, either through recklessness or negligence, to avail himself of his senses, aided by his experience, in discovering defects in the instrumentalities with which he is working, and which are discoverable even by a glance of the eye, and can not possibly be hidden from the view of any one who looks at the instrumentality in the light of day, the zeal and fidelity of the servant is not sufficient to overcome such manifest negligence. A careful study of the evidence for the plaintiff, giving to it every

reasonable inference that would support his claim to recover damages, leads us to the conclusion that the question, of his negligence, under well-settled principles of law, was not even issuable, and the judge properly awarded a nonsuit. *Judgment affirmed.*