### 5974.  GREEN *v.* BRINSON RAILWAY COMPANY.

RUSSELL, C. J.  It being alleged in the petition that the plaintiff did not know of the defective conditions of the locomotive operated by him as an engineer of the defendant company, to which his injuries were directly attributed, and that his means of knowledge were not equal to those of the master, and it further appearing, from the allegations of the petition, that in order to make the necessary repairs on the locomotive, it was necessary for him to go under the engine, the movement of which caused the injuries complained of, and this movement, as alleged, being traceable to the negligence of the fireman, in disobedience of the engineer's orders and in disregard of the fireman's duty, and questions of negligence and diligence being peculiarly for solution by the jury, a cause of action was set forth, and the trial judge erred in sustaining a general demurrer and dismissing the action.     *Judgment reversed.*

DECIDED AUGUST 2, 1915.

Action for damages; from city court of Waynesboro—Judge Davis.  June 8, 1914.

The petition alleged:  On March 28, 1912, the plaintiff was in the employ of the defendant railway company as engineer in charge and control of engine 338, drawing a certain construction-train over the defendant's railway, plaintiff being then subject to the orders of one Lightner, the foreman of bridge construction for the defendant.  On the morning of the said day the plaintiff, acting under instruction from the said Lightner, ran his said engine,

drawing a flat-car and pile-driver, from Sardis, a station on the said road, to a point near Old Church in Burke county, Georgia, where there was a washout on the line, which the plaintiff and a crew of workmen in charge of the said Lightner were to fill in and repair. At or near noon on the said day the plaintiff, in accordance with instruction from the said Lightner, placed his said engine and the pile-driver connected therewith in position to begin work of repairing the said washout. During the dinner hour on the said day the plaintiff was informed by the said Lightner that it would probably be late in the afternoon before his engine would be needed, and at Lightner's suggestion he banked the engine, and it remained banked until about half-past three o'clock in the afternoon, when the plaintiff, believing it necessary to get his engine in readiness to move, got down from the cab, and, while he was oiling the engine, discovered that one of the wedges in the driving-box on the right side of the engine had worked loose and dropped down, and that nuts were missing from three of the four bolts which held in place the draw-head on the front of the engine. It was dangerous to operate the engine without first drawing up and tightening the said wedge and replacing the nuts missing from the bolts of the said draw-head. When the plaintiff discovered the defective condition of his engine, the engine, with the pile-driver coupled to it and in position for operation, was standing with the solid part of the driving-wheels down, so that it became impossible for the plaintiff to tighten the said wedge without either moving the engine or going under it. In order to replace the nuts from the draw-head in front of the engine, it was absolutely necessary for the plaintiff to go under the engine. The plaintiff, seeing the urgent need of making the said repairs, and in compliance with his duty to the defendant, prepared to go under his engine, first calling the attention of his fireman, Cecil Cook, to the fact that he had to get under his said engine, and ordering the said Cook to remain on the engine while the plaintiff was making the repairs. The necessity for making the said repairs being urgent, and there being no other way in which the plaintiff could do the service then required of him, and believing that the said Cook would be and remain in the cab of the engine as ordered, the plaintiff went under the said engine and began tightening the wedge in the driver-box, and, while he was thus engaged, an engine used in the said pile-driver was put in

motion, when, suddenly and without warning to the plaintiff, his engine began to move, and, a waste-cock on the air-reservoir catching in his trousers, he was dragged along the track for some distance, and, while trying to hang on to the engine, to keep from being crushed thereunder, his right hand came in contact with the rail, and one wheel of the engine, passing over it, cut off his second and third fingers, and mashed the fourth finger of said hand. The plaintiff, as soon as aware of his perilous position, called to his fireman to stop the engine, but, unknown to the plaintiff and against his positive orders, the said fireman had quitted the engine and was not at his post to render the plaintiff the service which his perilous situation demanded, and it was not until after the plaintiff had been dragged for quite a distance and his hand crushed that some one climbed into the cab and brought the engine to a stop. It is alleged that the defendant was negligent in furnishing to the plaintiff an engine defective and out of repair; that it was not only defective in the respects hereinbefore pointed out, but was old and unsuited to the use in which it was employed by the defendant; that the throttle was worn and leaked, permitting steam to escape into the cylinders and causing the engine to move, to the injury of the plaintiff as aforesaid. The injuries were not due to a failure on the part of the plaintiff to use due care; at the time he received the injuries he was engaged in the performance of a duty in which he was exercising all ordinary and reasonable care and caution to avoid injury. The injuries were the direct and proximate result of the defendant's failure to provide safe machinery with which to work, and in employing in the work with the plaintiff a negligent and incompetent fireman, whose disregard of the plaintiff's orders and gross carelessness in leaving the engine, knowing the plaintiff to be at work thereunder, brought about or contributed to the said injuries. Had the said fireman remained on the engine as he had been ordered to do and as it was his duty to do, he could have stopped the engine without injury to the plaintiff; and had the plaintiff been provided with a safe engine and one not in need of repairs, he would not have been injured. The defective condition of the engine was not discovered by him until the 28th day of March, 1912, shortly before he attempted to make the needed repairs. The negligence of the defendant in providing him with an unsafe engine and the negligence of the fireman in quitting the en-

gine without notifying the plaintiff concurred to bring about the injury. The petition contained additional allegations, as to the extent to which the plaintiff had been damaged, etc.

*Brinson & Hatcher, W. D. Tutt, Isaac S. Peebles Jr.,* for plaintiff, cited: *Collins* v. *Sou. Ry. Co.,* 124 *Ga.* 853; Civil Code (1910), § 4426; *Augusta &c. R. Co.* v. *Dorsey,* 68 *Ga.* 228 (1); *Murray v.* Boston R. Co., 101 Am. St. Rep. 660 (54 Atl. 289); *Hubbard* v. *Macon Ry. Co.,* 5 *Ga. App.* 223; Conners v. Durite, 156 Mass. 163 (30 N. E. 559); 34 Am. Dig. Cen. Ed. 1673, sec. 1017(D); San Antonio R. Co. *v.* Lindsey, 27 Tex. Civ. App. 316 (65 S. W. 668); *Ocean S. Co.* v. *Matthews,* 86 *Ga.* 423; *Waycross Lumber Co.* v. *Guy,* 89 *Ga.* 148.

*Hitch & Denmark, H. J. Fullbright,* for defendant, cited: Civil Code (1910), §§ 3130, 3131; *Stewart* v. *Seaboard Ry.,* 115 *Ga.* 624; *Sou. Cotton Oil Co.* v. *Skipper,* 125 *Ga.* 368; *Banks* v. *Schofield's Sons Co.,* 126 *Ga.* 667; *Cen. Ry. Co.* v. *Brandenburg,* 129 *Ga.* 115; *Freeman* v. *Savannah Elec. Co.,* 130 *Ga.* 449; *Wallace* v. *Sou. Ry. Co.,* 10 *Ga. App.* 90; *Butler* v. *Atlanta Buggy Co.,* 10 *Ga. App.* 175; *Flury* v. *Hightower Co.,* 132 *Ga.* 300; *Sou. Ry. Co.* v. *Taylor,* 137 *Ga.* 707; *Ga. Ry. &c. Co.* v. *White,* 136 *Ga.* 846; *Howard* v. *Cen. Ry. Co.,* 138 *Ga.* 537; Civil Code, § 2782; *Wrightsville &c. R. Co.* v. *Tompkins,* 9 *Ga. App.* 154; *Cen. Ry. Co.* v. *Mosely,* 112 *Ga.* 914; *Moore* v. *King Mfg. Co.,* 124 *Ga.* 576.