9923. WILLIAMS *v.* CENTRAL OF GEORGIA RAILWAY CO.

WADE, C. J. Even if the allegations of the petition as finally amended be construed most strongly in favor of the plaintiff (and not against him as the law requires), the court did not err in dismissing it on demurrer; for it affirmatively appears therefrom that, although the defendant, his master, may have been guilty of negligence in furnishing him defective instrumentalities with which to work, his opportunities to discover their defective condition were equal, if not superior, to those of the master, since the defects were patent to superficial observation and were in fact observed by him before he was injured. *Butler* v. *Atlanta Buggy Co.*, 10 *Ga. App.* 175 (73 S. E. 25); *Kilgo* v. *Rome Soil Pipe Mfg. Co.*, 16 *Ga. App.* 737 (4) (86 S. E. 82), and cases cited. Moreover, the allegations show, as a matter of law, that his injury was the consequence of his own negligence coupled with the operation of natural law, the effect of which he could estimate as well as the master. *Williams* v. *Atlantic Coast Line R. Co.*, 18 *Ga. App.* 117 (89 S. E. 158), and cases cited.    *Judgment affirmed. Jenkins and Luke, JJ., concur.*

DECIDED APRIL 16, 1919.

Action for damages; from city court of Macon—Judge Guerry. June 19, 1918.

From the petition it appears that the plaintiff, a carpenter employed in the car-shop of the railway company, was standing on a scaffold in the shop, pulling out of a hole in a stake a bit which he had driven into it, when the bit suddenly came out and he fell from the scaffold to the floor and received certain injuries, which he alleges were caused by negligence of the company in not furnishing to him a bit suited to the purposes for which he was required to use it and in furnishing one not suited to the work in hand, and also in furnishing a platform too narrow for safety. It is alleged in substance: that he was engaged in repairing a dismantled coal-car; that other employees had bored holes in uprights or stakes placed in sockets alongside the floor of the car, and it was his duty to fasten planks on the inside of the stakes to a height of some four feet from the floor; that the planks had been nailed on the inside of the stakes so as to hold them securely against the stakes while holes were being bored through the planks; that it was his duty to place an air-driven bit through one of the holes in one of the stakes in order to bore a hole through the plank, so as to make the hole fit a bolt to be put through the stake and the plank; that a scaffold six or eight feet high and only about ten or twelve inches wide at the top was furnished to him to stand on; that to have been reasonably safe the scaffold should have been

three or more feet wide at the top; that he was compelled to work with a bit which was a sixteenth of an inch larger than the hole in the stake; that he had on a number of occasions asked his foreman for a bit of proper size, but was told that the company did not have such a bit; it had not had one for sixty or ninety days before the occasion on which he was injured; that on that occasion the foreman, in reply to his request for a bit of the proper size, told him the company did not have one, but would procure one in a short time; whereupon he used the one that had been furnished to him; that he placed it at the hole in the stake, and, because of its being only a sixteenth of an inch larger, it would not cut the hole in the stake larger, but under pressure from the air-pump it wedged itself through the hole tightly and was driven on through the plank, boring a hole through it; that when he undertook to pull the bit out, it came through the hole in the plank readily, but it was necessary for him to exert considerable strength in order to. pull it out of the hole in the stake, and while he was doing this the bit suddenly came out, causing him to fall from the scaffold to the floor and to receive injuries described. It is alleged that the air-pump used in propelling the bit was heavy, and he did not know there was danger of the bit coming suddenly out of the hole, and by the exercise of ordinary care he could not have known of this danger; that to his eye the hole in the stake appeared to be exactly similar to many other holes through which he had bored on this car and had pulled the bit out of the holes in both the planks and the stakes, and this was the only time he had any trouble of this kind; and if the company had furnished him with a bit a sixteenth of an inch smaller he would not have been exposed to the danger.

*Atkinson & Born, Charles Akerman,* for plaintiff, cited: Civil Code (1910), § 2783; *Pitts* v. *Florida Central &c. R. Co.,* 98 *Ga.* 605; *Bowen* v. *Adams,* 129 *Ga.* 688-91; *Hough v. Ry. Co.,* 100 U. S. 213; Gela Valley R. Co. *v.* Hall, 232 U. S. 94, 101-2, and cit.; *Stirk* v. *Cen. R. Co.,* 79 *Ga.* 495.

*R. C. Jordan,* for defendant, cited: *W. & A. R. Co.* v. *Moran,* 116 *Ga.* 441; *Ludd* v. *Wilkinson,* 118 *Ga.* 525; *Banks* v. *Schofield's Sons Co.,* 126 *Ga.* 667; *Hobbs* v. *Bowie,* 121 *Ga.* 421; *Wilder* v. *Miller,* 128 *Ga.* 139; *Bolden* v. *Cen. Ry. Co.,* 130 *Ga.* 456; *Flury* v. *Hightower Box Co.,* 132 *Ga.* 300; *Southern Ry. Co.* v. *Taylor,*

137 *Ga.* 704; *Butler* v. *Atlanta Buggy Co.,* supra; *Kilgo* v. *Rome Soil Pipe Mfg. Co.,* supra; *Williams* v. *A. C. L. R. Co.,* supra; *Waldo* v. *Cen. Ry. Co.,* 11 *Ga. App.* 484; *Elliott* v. *Tifton Mill Co.,* 12 *Ga. App.* 498; *Shue* v. *Cen. Ry. Co.,* 6 *Ga. App.* 714 (distinguished).