BASIL RORK, Appellant, v. H. H. KLEIN, Administrator, Appellee.

October 16, 1928.

M. R. Stansell and McGinnis & McGinnis, for appellant.

O. M. Slaymaker and R. E. Killmar, for appellee.

Albert, J.—Sarah E. Turner lived in a residence property in the town of Murray, in Clarke County. She was a woman of advanced years, and suffering from an incurable disease. Surrounding her dwelling house were a number of maple trees. Plaintiff, a man 36 years of age, was engaged a large part of his time in the employ of the telephone company, and had eight or ten years' experience in climbing telephone poles and topping trees. During the latter part of March, 1924, he was engaged in trimming trees in Mrs. Turner's neighborhood, and she solicited him to trim the trees around her residence. Plaintiff stated that he said, with reference to the tree in controversy, that he would rather "cut it off at the ground. It is dangerous,—it is brittle;" and that Mrs. Turner said she did not want it cut off at the ground; that she wanted the shade; and that he said, "There is only one way I will tackle it. It is your risk of all accidents to me;" and that she replied, "I will assume all risks of all accidents to you."

This is the testimony of plaintiff's wife. Another witness testified that Mrs. Turner told the witness that she was sorry plaintiff was hurt, and she wanted "to make it right with him;" that Mrs. Turner said, "It was at my risk, that all risk to him

he should not incur if he went into that tree." But this witness says, on cross-examination:

"She [Mrs. Turner] said that it was at her request that he went into the tree, and that she wanted to make it right. That is about the extent of what she said."

Another witness testified that Mrs. Turner said it was awful, and that she was going to make it right with him. That was all she said. She did not say anything about having assumed the risk to him.

Since Mrs. Turner was deceased at the time of the trial, plaintiff, of course, could not testify directly to his agreement with her.

Plaintiff testified that Mrs. Turner's grandson, one Burgess, a boy about 18 years of age, was talking with his grandmother about this matter, and that he overheard the conversation between them, in which he took no part. Plaintiff then proposed to show by himself that the grandson came to him to talk about trimming these trees, and especially the large tree from which the plaintiff fell; that plaintiff told the boy that, if he trimmed the large tree, it would be at his grandmother's risk; that the boy then told his grandmother, in plaintiff's presence, what plaintiff had said, and she told the grandson that she had guaranteed plaintiff against any injury he might sustain in the trimming of the large tree. This offer was made on the part of the plaintiff to prove these facts, but, on objection of the defendant, it was excluded. Without now stopping to determine the correctness of the ruling on the objection to this testimony, for the purposes of this case we will consider that the ruling was erroneous, and that the testimony should have been admitted, and will so treat it.

Plaintiff proceeded to the work of topping these trees, and, after several had been topped, started on the large maple tree in controversy. He climbed the tree, and found that the wind had broken several branches out of the top. He then attempted to cut the large limb which was involved in his fall. He says that, when he started to work on this limb, he had a safety belt, which he passed around the tree and fastened to his body, to keep him from falling. The base of this limb was about twelve

inches in diameter. He proceeded to saw the same from the top. He says:

"I worked until I thought it was not safe to saw any more, and then I took the saw out. When I changed my position, I located myself on the front part of the big limb, just at a nice working distance from the place where I started to cut the limb off. I expect I had sawed half over before I changed position. I was working with a hand saw. I remained in that position until I had sawed the limb off. When I moved from the first position over to the second position, I did not use my safety belt, but snapped it back, so that, if anything happened, I would be free, and not be caught. I cut the limb until it broke, and when it broke, it swung around and hit me, and that threw me ahead into the tree, and the limb threw me down, and I got my leg hurt. The limb split up and buckled up like a hinge. I could not tell how near I had it sawed off when it broke."

On cross-examination he said:

"After while I begun to think it was dangerous up there, and I loosened my safety device, and moved that entirely. I was in that condition when I sawed the limb that broke. I wasn't on that big limb. I was on the other limb, close. I didn't know how it would split, but I knew that maple trees were brittle, and would break easily. I don't remember doing anything on the opposite side of the limb to make it break off without splitting."

Plaintiff's petition is double-barreled, and he seeks to so treat it in this court. There are allegations in the petition which are sufficient to state an action in negligence against the deceased, and also to sustain a suit on contract between him and the deceased, by the terms of which the deceased agreed to assume the risk of all accidents to the plaintiff in the trimming of these trees. The record is wholly barren of proof of any negligence on the part of Mrs. Turner, so we give no further attention to this phase of the case.

Plaintiff's further claim is, however, that he had a contract with Mrs. Turner by which she agreed to be responsible for all accidents that might occur to him incident to his trim-

ming of this tree. The case is somewhat novel, and involves questions, so far as we are able to find, that have never been passed upon by this court. If we assume for this part of the argument, that the relation of employer and employee existed between Mrs. Turner and the plaintiff relative to this work, could a contract be made between them by which she assumed the risk incident to this work which, under the law, would ordinarily be assumed by the plaintiff? We know of no principle of law that would prevent these parties from making such a contract, if they so chose. Plaintiff relies largely on the case of *Phillips v. Michaels*, an Indiana case, reported in 11 Ind. App. 672 (39 N. E. 669). The facts in that case differ in some phases from the facts in the instant case. In that case, a young and inexperienced girl, less than 16 years of age, was employed to do handwork in a laundry. About a month after commencing work, she was directed to work at a steam mangle, about which she knew nothing. Defendant's foreman informed her there was no danger in operating it, and that it required no previous experience to do so. After she had worked at the mangle for about a week, she protested, stating that she had no experience, and believed it to be dangerous, and she desired to quit working thereon. She was then informed that it was not difficult to mangle or dangerous to operate the mangle, and that they would take all risk of any accidents that might occur to her by reason of her operation of said mangle. Later, she was hurt by having her hand crushed in the mangle. The action in that case, as in the case at bar, was on this agreement on the part of the employer to assume all the risks incident to the employment. The court there said:

"Counsel have cited and quoted from many authorities, not only of this court and the Supreme Court of this state, but of the courts of last resort of other states, holding that one who undertakes to use machinery in the operation of which more or less danger attaches, which dangers are open and obvious, assumes the risk thereof. This is a proposition of law so well settled that it seems hardly necessary to cite any authority in support of it. In the case under consideration, however, the natural risks were not assumed by the appellee; because she undertook to do the work upon the guaranty of the appellant that, for the risks naturally incident to the operation of the

machine, he would answer for her safety. The question, however, arises to what extent the guaranty of appellant applies, and whether, if the injury was the result of appellee's own negligence alone, appellant is liable. What did appellant undertake to protect appellee from,—only the usual risk incident to the operation of the machine, or did he also undertake to guarantee her as against her own negligence? We think it clear that the appellant did not undertake to compensate Iva Weaver [plaintiff] for injuries received through her own negligence, but only such as might befall her by reason of appellant's negligence, or by reason of the natural dangers incident to the use of the machinery when operated by her in an ordinarily prudent manner. If the evidence in this case is sufficient to show that the 'mangle' which was operated by appellee's ward was dangerous, and that she was injured because it was so, and that she was inexperienced and incapable of appreciating the danger, then the verdict is right. But, if, on the other hand, the evidence is such as shows that the machine was not dangerous to operate, and that the injury sustained by appellee's ward was the result of her own negligence, the verdict is wrong, and must be set aside.''

That case, therefore, holds two propositions: First, that a cause of action existed; and second, that, in a contract of this kind, plaintiff cannot recover in event that he is guilty of negligence. The same doctrines are recognized in *Elliott v. Tifton Mill & Gin Co.*, 12 Ga. App. 498 (77 S. E. 667); also *International Cotton Mills v. Webb*, 22 Ga. App. 309 (96 S. E. 16).

The question, then, is whether or not the court erred in directing a verdict for defendant on one of the grounds of the motion that appellant was guilty of negligence, as a matter of law. His own evidence shows that his objection to doing this work, in the first instance, was the brittleness of the tree. However, there is no evidence on his part or from any other witness tending to show that this limb broke by reason of its brittleness. There are some things about the sawing of limbs that even a layman understands. Appellant says that this limb was about 25 feet in length, and about 12 inches across the butt, where it was attached to the tree. He started to saw it from the top, and when he had sawed to the point where he says he thought it was dangerous, he took the saw out of the cut, and removed

his safety belt, which he formerly had around the tree, and did not use it again. He changed his position to another limb, which was apparently on a level with or lower than the limb which he was sawing, and sat there until he finished sawing off the limb in controversy. He says that, after he had replaced the saw in the cut, and proceeded to saw the second time, the limb split down. This is the necessary action of all limbs under such circumstances, and he was bound to know that. He says that the limb buckled up like a hinge, and that the sawed end hit him, and knocked him into the tree, from where he fell to the ground. He does not say that he used any effort whatever to avoid injury, and the facts above recited are the sum total of his testimony. Under these circumstances, we can reach no other conclusion than that plaintiff was guilty of negligence such as would defeat his recovery, under his own statement of facts.

Another all-sufficient reason why plaintiff cannot recover herein rests in the following: It is apparent that the objection that the plaintiff made to trimming this tree had no reference to the ordinary dangers incident to the trimming of trees, but only to the specific danger about which he complained,—to wit, that the tree was brittle; and that, by reason of this objection on the part of the plaintiff, Mrs. Turner gave him the assurance she did. She at no time intended to assure him against all injury, but attempted to assure him in accordance with the objection he made. In other words, she assumed, not the ordinary risks incident to the business, but the risk which he ran on account of the brittleness of the tree.

Turning to the evidence, and reviewing the incident as related by the plaintiff, we have the ordinary history of the sawing of a limb of a tree. When it reaches a given point, the top falls to the ground, and when, as in this case, the opposite side of the limb is not cut, the limb splits part of the tree with it. The record is wholly silent, either from testimony of the plaintiff or otherwise, that the limb broke from the inherent brittleness of the tree. The plaintiff does not testify that the breaking was unexpected, but, in fact, his testimony tends to show that he expected it to break at the time it did. In event that the testimony in fact showed that, owing to the inherent brittleness of the limb, without warning and unexpectedly, and

without anticipation on the part of the plaintiff, this limb had broken, that might be an entirely different case. But as the record stands, we cannot hold that the assurance that Mrs. Turner gave to the plaintiff was in any way violated or broken.

This being true, it is apparent that the ruling of the district court in directing a verdict for the defendant was right.— *Affirmed.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.