### 4580.  ELLIOTT v. TIFTON MILL AND GIN COMPANY.

1. Where one makes a contract to work on and about dangerous machinery, the law implies an engagement on his part to assume the ordinary risks incident to the employment,—that is to say, the risks of injury resulting from the ordinary use of the machinery, unmixed with negligence on the part of the master.

2. The master may, as a part of the contract, himself assume the risk of injury to the servant, even from the use, in the ordinary and usual way, of a defective or dangerous instrumentality. He may lawfully contract to compensate the servant for injuries resulting from an obvious defect or danger known to the servant. A promise to a servant to remove a danger or repair a defect will be construed as an assumption only of those risks which result from the use of an instrumentality not so obviously dangerous that no ordinarily prudent man would continue to use it, notwithstanding the promise. Such an assumption by the master of the risk of injury to the servant continues until the expiration of the time within which the master agreed to remove the danger, or for a reasonable time if no time be fixed.

3. No promise on the part of the master to remove a danger in an instrumentality will relieve a servant from the exercise of ordinary care for his own safety; and if he is injured while failing to exercise such care, this, and not the breach of the master's promise, will be held to have been the proximate cause of the injury.

4. On Saturday the owner of a ginnery assured one of the ginners that a rapidly revolving and exposed shaft and set-screw in the basement of the gin would be covered, but no time was fixed within which this was to be done. The ginner was sometimes compelled to go by the exposed shafting and set-screw in order to reach other machinery in the basement, which it was his duty to repair. On numerous occasions he had passed by the shafting with safety by going under the belt. On Monday, in the darkness, the ginner attempted to pass by the shafting in some other way than by going under the belt. He did not examine the shafting, but relied upon the master's promise that he would have the shafting and set-screw covered. The servant's clothing was caught in the set-screw and he was whirled around with the shafting and killed. *Held,* that the proximate cause of the servant's death was his own failure to exercise ordinary care, and that no recovery could be had against the master for his homicide.

DECIDED MARCH 18, 1913.

Action for damages; from city court of Tifton—Judge R. Eve. November 19, 1912.

*J. S. Ridgdill, Fulwood & Skeen,* for plaintiff.

*Battle & Hollis, R. D. Smith,* for defendant.

POTTLE, J. This is an action by a widow for the homicide of her husband by the alleged wrongful acts of the defendant. The case as laid in the petition is as follows: The deceased was employed as a ginner at the gin-house of the defendant. As a part of his

duty it became necessary for him to go from the rooms in which the gins were located to the basement where the machinery that operated the gins was placed, for the purpose of fixing what is known as the saw-fan belts, on account of the defects in which the gin under the management of the deceased could not properly be operated. While engaged in the performance of this duty in the basement, the deceased came in contact with a shafting and exposed set-screw; his clothes were caught in the set-screw, and he was hurled over and over in the rapidly revolving machinery and killed. At the time he was killed the basement was dark and dangerous. It was dangerous to keep and maintain an open and exposed set-screw. The defendant had known for a long time that the set-screw was exposed and uncovered, and knew when it was left in this condition that it was exceedingly dangerous to employees whose duty called them to the place where the shafting was located. On the Saturday preceding the deceased's death on Monday, the defendant gave orders for proper cuffs, collars, and covering to be placed upon the shafting, so as to cover the exposed set-screw and shafting, and render them harmless to its employees. The defendant was negligent in maintaining an unsafe and highly dangerous place where the deceased was obliged to perform services for the defendant. It was negligent in that after knowledge of the danger, it failed to have the set-screw and shafting covered as it had determined to do. For some time prior to the date of the injury resulting in the death of the deceased, he had often been called in the basement where the dangerous shafting was located, and he knew that the exposed condition of the set-screw rendered it dangerous to come in contact with it, and he "would always go under the belt and would never cross at the shaft, on account of the known danger of being caught in the exposed set-screw, but . . at the time and on the date when [he] was killed . . he did not know and had not equal means of knowing that said set-screws were still unprotected, that no cuffs, collars or covering had been placed thereon, and that there was at the time any danger on account thereof; for [he] had been informed by the defendant that said dangerous situation would be removed and cuffs put on and over said dangerous, exposed set-screws, on Saturday previous to Monday when [he] met his death; and, . . relying upon such information and believing that the danger had been removed

and the shafting and set-screws covered; [he] was lulled into security and met his death as herein set forth." The deceased was, at the time he was killed, in the exercise of all ordinary and reasonable care and caution on his part, and his death was caused by the negligence of the defendant, herein set forth. He was forty-nine years old, was strong and healthy, and was earning $75 per month. Damages were laid in the sum of $10,000.

The defendant filed a general demurrer, upon the grounds, that no cause of action was set forth; that it affirmatively appeared in the petition that the defendant was not negligent; that the deceased assumed the risks of the danger which brought about his death; that his death was the result of his own negligence; that by the exercise of ordinary care he could have avoided the injury that resulted in the homicide; and that he had equal means with the master of knowing, and by the exercise of ordinary care could have known, that the set-screw was not boxed or covered. These grounds were amplified in other grounds. There was a special demurrer to so much of the petition as averred that the deceased had been informed by the defendant that the shafting and set-screw would be covered, upon the ground that this allegation did not show a promise on the part of the defendant to cover the set-screw, and that, even treating it as a promise, it affirmatively appeared from the petition that a reasonable time had not elapsed for it to be carried into effect; also that the deceased had no right to rely upon such promise, his duties not specifically requiring him to work around such dangerous machinery; and that the alleged promise of the master was a statement merely in reference to his own interest, and not in reference to any personal danger to the deceased. The demurrers were sustained, and the plaintiff excepted.

1. It often happens that in the conduct of the master's business it is necessary for him to employ dangerous machinery. There are many hazardous occupations. Whenever a contract is made between a master and a servant by which the latter engages to perform a hazardous enterprise or to work around and upon dangerous machinery, certain obligations on the part, both of the master and the servant, not expressed in the contract, are raised by implication of law. There is no implication that the master will not use dangerous machinery. The law does imply that he will not set the servant to work upon defective instrumentalities, and

he is under a statutory duty. to furnish machinery similar in kind
to that in general use, and reasonably safe for all persons who
operate it with ordinary care.   Civil Code, § 3130. This the
servant has the right to demand; and the master will be liable
for injuries resulting from failure to comply with this duty, un-
less the servant is prevented from recovering by his own failure
to exercise ordinary care.   This statutory duty imposed on the
master is a modification of the common-law rule which permits
a master to employ any kind of works or machinery about his
business that he sees proper.   The soundness of this common-law
rule is very vigorously combated by Labatt in his treatise on
Master & Servant, vol. 1, § 61 et seq.   As we have seen, however,
the harshness of this rule has been greatly mitigated by statute in
this State.   But while this duty rests upon the master, still, if
he furnishes machinery less safe than that in general use, and the
servant enters into the contract with knowledge of the dangerous
character of the machinery, he will be held to have assumed the
risk of injury from the use of the machinery in the usual and or-
dinary way, unmixed with any acts of negligence on the part of
the master.   If the danger is obvious to a person of ordinary pru-
dence, the risk of injury is ordinarily assumed by the servant.
*Howard* v. *Central Railway Co.,* 138 *Ga.* 537 (75 S. E. 624);
*Charleston & Western Carolina Railway Co.* v. *Robinson,* 11 *Ga.
App.* 492 (75 S. E. 820); *Charleston & Western Carolina Railway
Co.* v. *Brown,* 11 *Ga. App.* 493 (75 S. E. 826).   The doctrine was
applied in the case of *Commercial Guano Co.* v. *Neather,* 114 *Ga.*
416 (40 S. E. 299), where it was held that working in close prox-
imity to a large metallic shafting revolving at a rapid rate of
speed was so obviously dangerous that it was not incumbent upon
the master to give to an adult employee of ordinary common sense
any warning of the existence of the danger.   This rule is applica-
ble without reference to whether the danger arises from something
inherent in the instrumentality itself, or whether it results from
an obvious defect in the machinery, which would not be dangerous
except for the defect.   *Wallace* v. *Southern Railway Co.,* 10 *Ga.
App.* 90, 92 (72 S. E. 606).   It is only where there are latent
defects or dangers incident to the employment which the master
knows or ought to know, and which are unknown to the servant,
that the master is bound to give him warning in reference thereto.

Civil Code, § 3130. It is apparent, therefore, that the petition set forth no cause of action, in so far as it alleged liability of the master growing out of the dangerous condition of the instrumentality. The danger was obvious. The plaintiff's husband was a matured and experienced man, having had abundant opportunity to observe and appreciate the danger attendant upon work in proximity to the rapidly revolving shafting and set-screw. Indeed it is distinctly alleged in the petition that he actually did know and appreciate the danger.

2. Do the allegations in reference to the alleged promise of the master to cover the shafting and set-screw, so as to render them less dangerous, and the failure to comply with this promise render the master liable for the homicide of the plaintiff's husband? The servant assumed the ordinary risks of his employment; for the law implies that he engaged to do so in making the contract of employment. *Brown* v. *Rome Foundry Co.*, 5 *Ga. App.* 142 (62 S. E. 720). There is no legal reason why the master should not, in making a contract of employment, relieve the servant from the assumption of the risks incident to the use of dangerous or defective instrumentalities. If the master should make a contract of this character he would be bound by it. And so it is that, even after the contract is made and performance thereunder begun, if the servant should discover a danger incident to the use of an instrumentality in the master's business and decline to proceed further with the work unless the master will remove the danger, and the master agrees to do this, he will be held to have assumed the risk of injury to the servant arising from the use of the instrumentality until the expiration of the time within which he agreed to remove the danger. If no time has been fixed, then the law will imply that the defects or dangers must be removed within a reasonable time. *Hadden* v. *Cherokee Sawmill Co.*, ante, 120 (76 S. E. 997); 1 Labatt, Master and Servant, § 429; *Shue* v. *Central Railway Co.*, 6 *Ga. App.* 714 (65 S. E. 697).

Counsel for the defendant contends that in no case will the master be held to have assumed the risk unless there has been an express complaint made by the servant in reference to a defect or danger in some instrumentality with which he has been put to work, and that in response to this complaint an express promise has been made by the master to remove the defect or danger. There

are authorities which support·this contention.- International. &c. R. Co. v. Turner, 3 Tex. Civ..App. 487 (23 S. W. 146) ; Industrial Lumber Co. v. Johnson,· 22 ·Tex. Civ. App. 596 (55 ·S. W.· 362) ; 1 Labatt, Master & Servant, 1183 ·et seq·; Lewis v. New·York R. Co., 153 Mass. 73 (26 N. E. 431, ·10 ·L. R. A. 513). This, we think, states the rule too strongly against the servant. The better rule is that, if, from the conversation with the master,· in the light of all the surrounding circumstances, it can be inferred that the servant objected to proceeding with the work on account of the dangerous or defective instrumentality, and that the master assured him that the danger or defect would be removed, the servant will not ordinarily be held to have assumed the risk of injury if·he proceed with the work .relying upon the master's promise. *Bush* v. *West Yellow Pine Co., 2 Ga. App.* 295 (58 S. E. 529) ; *Cheeney* v. *Ocean Steamship Co.,* 92 *Ga.* 731 (19 S. E. 33) ; *Shue* v. *Central Railway Co.,* supra. This rule, however,· is subject to the qualification that no promise on the part ·of the master will authorize· the servant to continue work if the danger is so patent that no person of ordinary prudence would work with the instrumentality until· the danger is removed. 26 Cyc. 1209.

3, 4. Treating the promise to remove the·danger, as alleged·in the petition, as being sufficient to show that ·the master agreed to assume the risk of injury to the servant while he was using the instrumentality in the ordinary and usual way, does the petition set forth a cause of action? · The .effect of the master's engagement· was that he would assume the risks of injury to the servant, resulting from the ordinary use of.·the machinery, provided the servant was not himself negligent and did not by .his failure to exercise ordinary care contribute to the injury. *Brown* v.· *Rome Foundry Co.,* supra. The petition alleges that on Saturday .the master assured the servant that the danger would be removed. ·No time was· fixed within which this was to be done. The shafting and set-screw .were not instrumentalities with· which the servant·was con-stantly at work. He was required to go in proximity to the shafting·.. and set-screw only when it was necessary for him to go into the basement to adjust some of the machinery which had gotten out of· order. But two days intervened between the alleged promise and the servant's death, and one of these days was Sunday. Ordinarily it would be a question for the jury to say whether or not,

under all the facts and circumstances, a reasonable time had elapsed. Certainly, under the allegations of this petition, the master's promise was still in force. But did the servant have the right to assume, without making any investigation at all for himself, that the master had already complied with his promise, notwithstanding the short time which had elapsed since the promise? It would be quite different if the master had told the servant that the danger had been removed. In such case, unless it was obvious that the master had spoken falsely, the servant could rely upon his assurance. But a servant has no right to rely upon a promise to remove a danger at some time in the future, with no time specified, without taking the precautions of an ordinarily prudent man to see whether or not the promise has been complied with. For example, if the servant should complain to his master of an open and uncovered well on his premises, and the master should state that he recognized the danger and would cover the well, would the servant be excused if he fell into the well in the nighttime a day or two after this indefinite promise, without making the slightest effort to ascertain whether the master's promise had been complied with? Here the servant had a safe way in which to reach the basement. He had repeatedly gone under the belt with safety According to the allegations of the petition, without making the slightest effort to see whether the shafting and set-screw had been covered, and in the darkness, when he could not see whether the danger had been removed, he voluntarily abandoned the safe way which he had formerly used, and undertook to go by the shafting, in some way not disclosed in the petition, but which was obviously dangerous if the shafting had not been covered. The conduct of the servant evidenced a reckless disregard for his own safety, and amounted to such contributory negligence on his part as prevented his widow from taking advantage of the master's assurance that the shafting and set-screw would be covered. Certainly, by the exercise of ordinary care, he could have discovered that the shafting and set-screw were still exposed, and the master's promise did not absolve him from the necessity of exercising such a degree of care for his own safety. There was no error in dismissing the petition.

*Judgment affirmed.*