*M. E. O'Neal, J. C. Hale,* for plaintiff.

---

## 9039. LOUISVILLE & NASHVILLE RAILROAD COMPANY et al. v. DUNN.

1. The general rule of law, that it is the duty of the master to exercise ordinary care and diligence in providing a reasonably safe place of work for his servants, does not apply to a case where the very work for which the servant is employed is of such a nature that its progress is constantly changing the conditions as regards an increase or diminution of safety. The hazards thus arising as the work proceeds must be regarded as being the ordinary dangers of the employment, and the servant necessarily assumes them. 3 Labatt's Master and Servant (2d ed.), 3140, § 1177. Thus, where the injured servant was hired for the express purpose of assisting in the repair, demolition, or alteration of some instrumentality, and the unsafe conditions from which the injury resulted arose from or were incidental to the work undertaken by him, the above-stated general rule is not applicable. 3 Labatt's Master and Servant (2d ed.), 2466, § 924; *Ludd* v. *Wilkins,* 118 *Ga.* 525. (45 S. E. 429); *Hagins* v. *Southern Bell Telephone &c. Co.,* 134 *Ga.* 641 (68 S. E. 428, 137 Am. St. R. 270, 20 Ann. Cas. 248); *Southern Railway Co.* v. *Taylor,* 137 *Ga.* 704 (73 S. E. 1055)'; *Byrd* v. *Thompson,* 146 *Ga.* 300 (91 S. E. 100); *Holland* v. *Durham Coal &c. Co.,* 131 *Ga.* 715 (63 S. E. 290); *Robertson* v. *Merchants &c. Trans. Co.,* 18 *Ga. App.* 568 (90 S. E. 104); Gulf &c. Ry. Co. *v.* Jackson, 65 Fed. 48 (12 C. C. A. 507).

2. In a suit by a servant for personal injuries arising from the negligence of the master in failing to comply with the duties set forth in section 3130 of the Civil Code of 1910, it must appear that the master knew or ought to have known of the incompetency of the other servants, or of the defects or danger in the machinery supplied; and it must also appear that the injured servant did not know and did not have equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof. Civil Code (1910), § 3131.

3. In a suit brought by an employee of a common carrier by railroad against the company, for personal injuries, he can not recover if his injuries were caused by his own carelessness amounting to a failure to exercise ordinary care; or if by the exercise of ordinary care he could

have avoided the consequences of the defendant's negligence. Civil Code (1910), §§ 2781, 4426.

4. Even the direct and immediate order of the master will not justify a servant in rashly exposing himself to a known and obvious danger; and if, in compliance with such order, the servant be injured, he can not recover of the master. *Southern Railway Co.* v. *Taylor*, supra; *Hightower* v. *Southern Ry. Co.*, 146 *Ga.* 279 · (91 S. E. 52, L. R. A. 1917C, 481); *Southern Cotton Oil Co.* v. *Gladman*, 1 *Ga. App.* 259 (6), 260 (58 S. E. 249); *Attleton* v. *Bibb Mfg. Co.*, 5 *Ga. App.* 777 (63 S. E. 918); *Williams* v. *Atlantic Coast Line R. Co.*, 18 *Ga. App.* 117 (89 S. E. 158).

5. In an action by a servant against a master for alleged failure of duty by the latter in not giving to the former warning of a danger incident to his employment, if the danger was-obvious and as easily known to the servant as to the master, the latter will not be liable for failing to give warning to the servant. *Crown Cotton Mills* v. *McNally*, 123 *Ga.* 35 (3) (51 S. E. 13); *Hendrix* v. *Vale Royal Mfg. Co.*, 134 *Ga.* 712 (68 S. E. 483).

6. In a suit for personal injuries, under repeated rulings of this court and of the Supreme Court, while questions of negligence, including the question whether the plaintiff by the use of ordinary care could have avoided being injured, are for the jury to determine, yet where the finding of the jury on such issues is not supported by any evidence, such finding should be set aside and a new trial granted.

DECIDED DECEMBER 11, 1917.

Certiorari; from Jones superior court—Judge Park. June 13, 1917.

*Cumming & Harper, Hardeman, Jones, Park & Johnston, Harry S. Strozier, E. T. Dumas Jr., R. N. Hardeman,* for plaintiff in error.

*L. D. McGregor, George Westmoreland,* contra.

BROYLES, P. J.` T. B. Dunn brought suit in the city court of Gray, Jones county, against the Louisville and Nashville Railroad Company and the Atlantic Coast Line Railroad Company, for personal injuries sustained by him. The first verdict in his favor was set aside on certiorari. On the second trial a verdict and judgment for the plaintiff were again rendered, and the defendants filed a petition for certiorari, which the judge of the superior court refused to sanction, and to that judgment the defendants excepted. The undisputed material facts in the case are as follows: Dunn was an employee of the defendant railroad companies, and was a member of a bridge-gang which was repairing a wagon-bridge over the railroad-track. He had had about five years experience on a bridge-gang. A new support, called a "bent," to this bridge having been erected, the foreman directed the members of his

gang to cut down the old bent, which was rotten. The bent consisted of two upright posts and two leaning posts, the upright posts being on the outside, and the leaning posts on the inside and leaning towards each other. All four posts were mortised into a large timber on the ground, and were likewise mortised into a cap timber at the top. The entire bent was on one side of the railroad-track. All of the posts were about twenty-five feet long and about 8x8 inches in size. The leaning posts were called "batter-posts." The foreman ordered the batter-posts to be cut down; and Goldman, an employee, got an ax and commenced to cut down one of the batter-posts. At about the same time, according to some of the testimony, the foreman told Dunn to cut down the other battle-post. Dunn got an ax, passed by Goldman, who was cutting down one of the posts, went to the other batter-post, directly in range of the post which Goldman was cutting, and began to cut on his (Dunn's) post. After he had cut two or three licks Goldman's post fell over the way it was leaning, the top of it striking Dunn and causing his injuries. The batter-posts were not tied at the top to the bridge superstructure while they were being cut out.

1. It is clear from the evidence that Dunn was employed for the express purpose of assisting in the repair of an unsafe structure, which was obviously dangerous work. The particular work in which he and his fellow workman were engaged, at the time he was injured, was the cutting down of the rotten batter-posts. This was inherently and necessarily a dangerous occupation, and the undisputed evidence is that Dunn knew this as well as the master did, he himself testifying that "they were taking it [the bent] down because it was so badly decayed and rotten that it was not safe to stay there and support the bridge. . . I knew when they took that bent out it was because it was a rotten bent." It must be held, therefore, that Dunn assumed the risk incident to such employment; and the rule of law that the master must furnish the servant a reasonably safe place in which to work is not here applicable. See authorities cited in the 1st headnote.

2, 3. It is strongly contended, however, by the learned counsel for the defendant in error that the railroad companies were negligent in not tying to the bridge superstructure the batter-posts at the top, while they were being cut down, and that this negligence was the cause of the plaintiff's injuries. The evidence does not

clearly show that it was the defendants' duty to have so tied the posts; but, conceding that the testimony was sufficient to authorize the jury to find that it was, the uncontradicted evidence, including the plaintiff's own testimony, shows that, after this negligence had become apparent, the plaintiff, by the exercise of the slightest degree of ·ordinary care, could have discovered and avoided the danger. It is obvious from the facts of the case that Dunn, by simply looking up to the top of the posts could have seen whether they were tied, but, as he himself testified, "I didn't look to see whether these batter-posts were tied or not, and I went there underneath that batter-post and commenced to cut the other one down without looking to see whether Goldman's post was tied or not." It appears undisputed from the evidence that Dunn was an able-bodied, experienced man, engaged in a work which he knew was dangerous, and especially dangerous unless the rotten batter-posts were tied at the top. He also knew that the post which Goldman was cutting was leaning towards the other post which he was going to cut down, and that it was within striking distance of it, and that unless the Goldman post was tied at the top it must necessarily fall upon him if he was engaged in cutting down the other post. · He must also necessarily have known that such a small post would be cut down with a few strokes of the ax,—which actually happened.

It is undisputed that Goldman had commenced to cut down his post before Dunn started to cut on his, and that Dunn had knowledge of this fact, he testifying that "he [Goldman] was chopping on his when I took up the ax and started. . . When I was cutting my post and Mr. Goldman was cutting his, I kinder had my back to him." It is apparent that the obviously safe way for the plaintiff to have done his work would have been to have waited a few seconds until Goldman had cut down his post, and then to have commenced cutting down the other one. It is shown by the undisputed evidence that it was the custom to cut down only one batter-post at a time, and never to cut down two at the same time. On this point the plaintiff's own testimony was: "I knew from my experience in cutting down bridges that the usual thing to do was to cut out one batter-post, then cut out the other batter-post. . . I don't know that I ever knew in all my experience two men cutting on two batter-posts at the same time. . . If I had

waited until Mr. Goldman quit cutting his post down, I don't know as I would have gotten hurt." The evidence of the foreman, which was undisputed, was that one post was always cut down before cutting was commenced on another post, he testifying: "We didn't chop two posts instead of one, for the reason that we didn't want but one cut down at the same time, because we didn't want two to fall at the same time, because it was dangerous." Thus the facts show that Dunn, who had had several years experience on a bridge-gang, knowing that Goldman was cutting down a post, which from its position was obliged to fall, within a few seconds, in the direction and within striking distance of the other post, stepped up to the second post, and with his back turned to Goldman, started cutting it down. It is clear that in so acting he was guilty of a want of ordinary care, and was not entitled to recover in this case. See authorities cited in the 2d and 3d headnotes.

4. It is insisted, however, by counsel for the defendant in error, that Dunn was justified in so acting, because he was ordered to do so by his superior, the foreman of the bridge-gang. The evidence does not show that the foreman ordered Dunn to begin cutting down his post before Goldman finished cutting down the other one; but conceding, for the sake of the argument, that there was a sufficient legal inferenec from the evidence to authorize the jury to find that he did, still, under another well-known principle of law applicable to the facts of this case, the plaintiff was not entitled to recover. Where an order of a master to a servant is negligent, and the servant knows of the peril of complying with it, or if he has equal means with his master of knowing of the peril, or by the exercise of ordinary care might have known of it, then he can not recover for an injury received in consequence of complying with the order. See authorities cited in the 4th headnote.

5. Under the facts of the case the defendants were not liable for failing to warn the plaintiff of the danger in cutting down the post, such danger being obvious and as easily known to the servant as to the master. See authorities cited in the 5th headnote.

There was no evidence to support the allegations in the petition that it was the custom and rule of the defendants on such an occasion to give due warning to all employees standing near by, in time for them to escape any injury from the falling of the posts, and that the plaintiff relied upon such warning.

6. The 6th headnote requires no elaboration.

The evidence, both for the plaintiff and for the defendants, clearly showed that, even if the defendants were guilty of negligence in failing to tie the batter-posts at the top, and in negligently ordering the plaintiff to cut down one of the batter-posts while the other batter-post was being felled, the plaintiff, by the exercise of ordinary care on his part, could have avoided the consequences to himself caused by the defendants' negligence; and there was no evidence to authorize a contrary finding. It follows that the plaintiff was not entitled to recover in this case, and that the verdict in his favor was unauthorized. The court therefore erred in refusing to sanction the cetriorari sued out by the defendants. This ruling being controlling in the case, it is unnecessary to consider the other assignments of error in the petition for certiorari.

*Judgment reversed. Bloodworth and Harwell, JJ., concur.*