## 25757. ATLANTA, BIRMINGHAM AND COAST RAILROAD COMPANY v. KING.

DECIDED OCTOBER 30, 1936. REHEARING DENIED DECEMBER 15, 1936.

*Wilson, Bennett & Pedrick,* for plaintiff in error.

*Ringel & Ringel, Krauss & Strong, C. A. Williams,* contra.

GUERRY, J. C. L. King filed suit against the Atlanta, Birmingham and Coast Railroad Company for damages for injury to his person. In his petition he alleged, that he was a section foreman in charge of four men engaged in the maintenance of the tracks and road-bed of the defendant; that he was a fellow servant of the other members of his gang, and at the time of the injury complained of he was performing actual manual labor; that while so engaged he was using a tool known as an adz, the same being a heavy steel tool, having a wooden handle fastened at the center, with a curved surface ending in a blade or sharp edge which was used to cut, chip, shave, and shape wood and crossties; that said adz was furnished to him by the defendant for the purpose of shaping crossties; and "that while thus engaged and without fault" on his part, and as a result of an ordinary blow by the said adz upon said crosstie, part of said adz broke and burst off of the end thereof, and one of said pieces struck the plaintiff in his left eye, which injury caused blindness in that eye, and such injury will cause the loss of the sight of his other eye; that a week or two weeks before this injury he advised his immediate superior, Moody, who was roadmaster and "alter ego for defendant company," that said adz was old and worn and was chipped on the end and defective and requested that a new and better adz be furnished; that Moody informed and advised plaintiff that he would

in a short time furnish a new and better adz, and "assured petitioner that it would be safe and all right, in the meantime, for petitioner to temporarily continue to use said adz;" and that, relying on Moody's promise to furnish a new and better adz, and relying on the assurance by Moody that it was safe and all right, he did continue to use said adz until the time of the injury; that the adz did not appear to be and was not so dangerous that the use of the same would or did amount to rashness on his part. A general demurrer, which was overruled, points out that it conclusively appears from the petition that if plaintiff sustained any injury by reason of the defective adz, he knew of such defect and by the exercise of ordinary care could have known of the defect, and therefore he assumed the risk of injury from the use thereof.

Few subjects of the law have a more obscure and complicated terminology than that appertaining to the doctrine of assumption of risk. The Code declares: "The master is bound to exercise ordinary care in the selection of servants, and not to retain them after knowledge of incompetency; he shall use like care in furnishing machinery equal in kind to that in general use, and reasonably safe for all persons who operate it with ordinary care and diligence. If there are latent defects in machinery, or dangers incident to an employment, unknown to the servant, of which the master knows or ought to know, he shall give the servant warning in respect thereto." § 66-301. "A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself. In suits for injuries arising from the negligence of the master in failing to comply with the duties imposed by section 66-301, in order that the servant may recover it must appear that the master knew or ought to have known of the incompetency of the other servant, or of the defects or danger in the machinery supplied; and it must also appear that the servant injured did not know and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof." § 66-303. It was said, in *Emanuel* v. *Ga. & Fla. Ry. Co.*, 142 *Ga.* 543 (83 S. E. 230) : "In dealing with the doctrine of the assumption of risks by an employee, the difference between ordinary and extraordinary risks must not be overlooked. Ordinary risks are usually described as being those incident to the business, and do not imply the result of the master's negligence. The

expression, 'extraordinary risks,' is generally used to describe risks arising from the negligence of the master, and they are generally held not to be assumed unless they are known or obvious." It matters not whether the doctrine of assumption of risk by an employee is based on the contract of employment by which the servant impliedly assumes those risks incident to the business undertaken, as well as those arising from the negligence of the master, after such risks are known or are obvious, where the employee continues to perform the service in view of the risk existing, or that the doctrine is based on the theory that he who consents to an act will not be heard to claim he is wronged thereby, or that the fact that the servant remains in the service after notice and knowledge of the danger, which act constitutes a waiver of any consequences to himself. The Code sections above quoted accurately fix the principles as applied in this State. It is unquestionably true in this case, that if the servant knew that the adz was a dangerous instrument which would likely cause chips or pieces to be thrown therefrom when in ordinary use, and with this knowledge he continued to use the same, he assumed the risk, and the master is not liable; and this is true even though it was used under the direct order of the master. *Southern Ry. Co.* v. *Taylor,* 137 *Ga.* 704 (73 S. E. 1055). In discussing *Baker* v. *W. & A. R. Co.,* 68 *Ga.* 699, the Supreme Court said, in *Emanuel* v. *Ga. & Fla. Ry. Co.,* supra: "A charge to the effect that if the plaintiff knew of the defective condition of the tools, in using them 'he is not free from negligence,' was affirmed, putting the ruling on the doctrine of negligence, not that of assumption of risks."

In 18 R. C. L. 694, § 179, it is said: "Although an employee may have had knowledge, as of a physical fact, of the defective condition of a tool, appliance or place, by reason of which he has sustained an injury, it by no means follows that he must have appreciated the danger to which he was exposed thereby. His general knowledge may not have been such as to give him any conception of the peril. The condition may have appeared perfectly harmless. If this is shown to have been the case, his right of recovery is not defeated, for it is an appreciation of the danger, not mere knowledge of the defect by which the danger is threatened, that bars his action. . . When, however, a peril is obvious or so patent as to be readily understood by the employee by

the reasonable use of his senses, having in view his age, intelligence, and experience, he will not be heard to say that he did not realize or appreciate it." Another principle involved in the character of the present case is discussed in 18 R. C. L. 696, § 180, where it is said: "It is a well-settled general rule that the fault or 'assumption of risk' implied from a servant's knowledge that a tool, instrument, appliance, piece of machinery, or place of work is defective or dangerous is suspended by the master's promise to repair, made in response to the servant's complaint, so that if the servant is induced by such promise to continue at work he may recover for any injury which he sustains by reason of such defect within a reasonable time after the making of the promise." In *Cheeney* v. *Ocean Steamship Co.*, 92 *Ga.* 726 (19 S. E. 33, 44 Am. St. R. 113), the Supreme Court quoted from Cooley on Torts (2d ed.), § 559, as follows: "If the servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good. Moreover, the assurances remove all ground for the argument that the servant, by continuing the employment, engages to assume its risks. So far as the particular peril is concerned, the implication of law is rebutted by the giving and accepting of the assurance; for nothing is plainer or more reasonable than that the parties may and should, where practicable, come to an understanding between themselves regarding matters of this nature." See also 4 Labatt's Master and Servant, § 1342(1); *Freeman* v. *Savannah Electric Co.*, 130 *Ga.* 449 (60 S. E. 1042). In this connection Judge Powell, in *Bush* v. *West Yellow Pine Co.*, 2 *Ga. App.* 295 (58 S. E. 529), used this language: "The servant, recognizing that the risk is on himself, says to the master, 'This instrumentality furnished by you to me is unsafe;' the master replies, 'Use it; it is safe,' or 'Use it temporarily, and I will repair it and make it safe;' the servant obeys the order and is injured. What effect will the law give to such transactions? In the first, where the master says 'it is safe,' the law will construe these words as such a warranty that a breach of it will release the servant from the assumption of the risk. In the other case, where the master says, 'Use it; I will repair it and make it

safe,' the law implies an agreement on the master's part that the temporary use pending the time necessary to get the repairing done shall be at his risk, and not at that of the servant, who has complained of the instrumentality."

In *Shue* v. *Central of Ga. Ry. Co.*, 6 *Ga. App.* 714 (65 S. E. 697), it was ruled: "Where a servant knows before he enters service, or discovers afterwards, that an instrument is unsafe, and makes complaint to the master of this fact, and is directed by the master to use the unsafe instrument, and does so, relying upon the promise of the master to furnish him with a safe instrument, the assumption by the master of the increased risk to the servant in the use of the unsafe instrument will continue until the master fulfils his promise, or notifies the servant of his unwillingness or inability to do so, or until such length of time has elapsed as would, under all the facts and circumstances of the particular case, make it unreasonable for the servant to rely upon the promise." Judge Lumpkin, in *Freeman* v. *Savannah Electric Co.*, supra, discussing this principle, said: "Ordinarily, although a defect in a machine may be known to the servant, if the master promises to remedy it, or to supply a different machine, and directs the servant to proceed with its use, this takes the case out of the operation of the general rule, which declares as a matter of law, on the doctrine of assumption of risks, that a servant who knowingly uses a defective and dangerous machine and is injured thereby can not recover damages from the master. The servant may often rely on such assurance, and continue to use the machine, at least for a reasonable time and with due care, while awaiting the remedying of the defect; and such continued use will not of itself necessarily prevent a recovery. So far as the particular peril is concerned, the implication of law of engagement by the servant to assume the risk is rebutted by the giving and accepting of the assurance. . . The danger, however, of even temporarily continuing to use the machine may be so obvious that no man of ordinary prudence would proceed on the expectation or promise of a future remedy; and the defense of negligence on the part of the servant in continuing in obvious and imminent danger, or in the manner of using the defective machine, may arise. If the master is negligent, the servant would still be prevented from recovering, if by the use of ordinary care he could have avoided the consequences

of the defendant's negligence, and failed to do so." In the present case, if the danger from the use of the adz in its usual and ordinary manner was so obvious that an ordinarily prudent man would refrain from its use, then in that event the assurance of safety or replacement by the employer would not operate to give the employee a cause of action by reason of injury from continued use of the adz, for it would be apparent that the servant by the use of ordinary care could and should have avoided the consequences resulting from the use of an obviously unsafe tool. On the other hand, if such tool was worn and old but its condition was not such that the danger from its use would be apparent to an ordinarily prudent man, the servant had the right to continue its use relying on the assurance of the master that its defects would be remedied or a new and better tool furnished. The petition in the present case alleges "it did not appear that the danger in using said adz was so patent, that no person of ordinary prudence would have attempted its use in the meantime." It is true that the petition may show on its face that the servant had equal opportunity with the master of knowing the defects in the tool, and may have had equal opportunity to apprehend the danger from its use. But, as was said in *Cheeney* v. *Ocean Steamship Co.,* supra, the assurances of the master remove all ground for the argument that the servant, by continuing the employment, engages to assume the risk. In this connection Judge Powell, in *Bush* v. *West Yellow Pine Co.,* supra, said: "It is actionable negligence for the master to order his servant to work with an unsafe instrumentality; an assurance of safety coupled with the order, not only aggravates the master's negligence, but also relieves the servant from the assumption of risk; the assurance of safety likewise makes the question of the servant's contributory negligence one for solution by the jury, unless the danger be so obvious that to undertake to encounter it amounts to plain rashness." See also *International Cotton Mills* v. *Webb, 22 Ga. App.* 309 (96 S. E. 16). The special demurrers are without merit. The court did not err in overruling the demurrers.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*