**J. P. (Pat) WEBB, Appellant,**

v.

**STANDARD OIL COMPANY, Appellee.**

**No. 25615.**

United States Court of Appeals
Fifth Circuit.

June 24, 1969.

Rehearing Denied Aug. 27, 1969.

Ed G. Barham, Valdosta, Ga., W. D. Knight, Nashville, Ga., Franklin Barham, Coleman, Elliott & Blackburn, Valdosta, Ga., for appellant.

Kirk, McAlpin, Atlanta, Ga., Cam U. Young, Valdosta, Ga., Charles M. Kidd, A. Felton Jenkins, Jr., Atlanta, Ga., Young, Young & Ellerbee, Valdosta, Ga., King & Spalding, Atlanta, Ga., of counsel, for appellee.

Before JOHN R. BROWN, Chief Judge, TUTTLE, Circuit Judge, and FISHER, District Judge.

JOHN R. BROWN, Chief Judge:

The damage claim asserted in this diversity case arises from personal injuries sustained by plaintiff Webb in a fall from the defendant oil company's storage tank. Webb appeals from the dismissal of his complaint for failure to state a claim upon which relief could be granted.

In this Circuit the "high mortality rate" of dismissals on the "barebones pleadings" is a well-publicized fact. *See, e. g.,* Banco Continental v. Curtiss National Bank, 5 Cir., 1969, 406 F.2d 510; Mizell v. North Broward Hospital District, 5 Cir., 1968, 392 F.2d 580, 581; Barber v. M/V Blue Cat, 5 Cir., 1967, 372 F.2d 626; 1969 A.M.C. 211; *cf.* Keating v. Jones Development, Inc., 5

Cir., 1968, 398 F.2d 1011. On motion to dismiss, the complaint must be measured by the familiar, and very liberal, test of Conley v. Gibson, 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80.[1] Although this is a close case, and certainly a great deal closer than so many interred here, we conclude that the dismissal here, like so many others, cannot be sustained.

The "facts" of this case are simple, because there are none. Rather, there are at this point only allegations—both specific and general. A summary of the allegations of Webb's complaint is as follows:

Webb was a "commissioned agent" for the sale of Standard's products, and one of his duties was to measure the number of gallons of petroleum products required to fill a particular perpendicular type tank located at Standard's bulk plant. The tank was approximately 30 feet tall, and in order to make the required measurement, Webb had to climb a steel ladder constructed of metal rungs welded to pieces of angle iron. The angle iron forming the stay posts of the ladder was too large to be grasped by a man's hand, and there were no handrails, guardrails, landing or other protective devices attached to the ladder. In June 1965, while performing his duty to measure the amount of product in the tank, Webb was climbing the ladder at a point 20 to 30 feet above the ground when he fell and sustained severe physical injuries.

Webb had from time to time complained to Standard's agents that the ladder was unsafe. In response, these agents had assured Webb that the company had under study and consideration changes that would lessen the dangers attendant to the use of said ladder and had instructed him to continue to use it until the changes and safety devices could be installed.

It was, and is, Webb's contention that defendant's negligent refusal to provide a safe ladder or to install handrails or safety devices was the proximate cause of his injuries.

In his original petition in the District Court, Webb made some attempt to characterize his relationship with Standard Oil as that of landlord-tenant, but in this appeal he takes the position, and we think correctly, that their true relationship was that of principal and agent. Webb's theory of recovery is that the failure of the defendant-principal to provide safe working conditions to the plaintiff-agent constituted a breach of the codal duty imposed on the defendant by their relationship.[2]

This simple opener is almost lost as the successive contentions and counter contentions of the parties are successively matched as a sort of juridical *vingt-et-un*.

Thus, in support of its motion to dismiss in the Court below, Standard responded with the doctrine of assumption of risk[3] and contended that its applica-

1. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45–46, 78 S.Ct. at 102, 2 L. Ed.2d at 84.

2. The Georgia Code provides:
   "Care required of master; warning of servants of defects or dangers.— The master is bound to exercise ordinary care in the selection of servants, and not to retain them after knowledge of incompetency; he shall use like care in furnishing machinery equal in kind to that in general use, and reasonably safe for all persons who operate it with ordinary care and diligence. If there are latent defects in machinery, or dangers incident to an employment, unknown to the servant, of which the master knows or ought to know, he shall give the servant warning in respect thereto."
   Georgia Code §§ 66–301.
   This section of the Code is, however, merely declarative of principles developed in the case law.

3. "Assumption of risks by servants. Lack of knowledge of defects or dangers.—A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself. In suits for injuries arising from the

tion barred Webb's recovery. With his turn to draw, Webb invoked a Georgia exception to the general Georgia rule of assumption of risk—that the servant is not barred by the defense of assumption of risk if he has pointed out the obvious danger to the master, and the master commands the servant to proceed and assures him that there is no danger or that some measures will be taken to make the condition safer.[4] With scarcely a riffle Standard pulled out a Georgia exception to that exception: where there is an obvious danger, but the servant fails to exercise ordinary care and rashly exposes himself to the danger, he cannot recover from the master even though his actions were sanctioned or commanded by the master.[5]

■ In the view of this Court, this case breaks down into two significant questions. The first—the issue of assumption of risk—clearly appears to have been eliminated as a pleading obstacle by reason of quite specific allegations which anticipate these Georgia principles. In the early case of Bush v. West Yellow Pine Co., 1907, 2 Ga.App. 295, 58 S.E. 529, the Georgia Court, analyzing this particular facet of the law of master-servant liability, stated:

"[T]he servant, recognizing that the risk is on himself, says to the master, 'This instrumentality furnished by you to me is unsafe'. The master replies: 'Use it. It is safe'. Or 'Use it temporarily, and I will repair it and make it safe.' The servant

obeys the order and is injured. What effect will the law give to such transactions? In the first, where the master says, 'It is safe', the law will construe these words as such a warranty that a breach of it will release the servant from the assumption of the risk. In the other case, where the master says, 'Use it; I will repair it and make it safe';—the law implies an agreement on the master's part that the temporary use pending the time necessary to get the repairing done shall be at his risk, and not at that of the servant, who has complained of the instrumentality."

In the case before us, Webb alleged that when he complained to Standard's agents, they assured him that measures were being studied that would make the ladder safer and instructed him to continue to use the ladder until repairs could be made. We think that these statements, if made, or other facts and circumstances proved from which similar inferences could be drawn, would fit the Georgia notion of an implied agreement to bear the risk of accident during the time prior to accomplishment of the repairs.[6] Thus, if these or comparable facts were proved, the defense of assumption of risk would go out of the case.

■ That brings us to the second question. For still undaunted, Standard sets its second line of defense in the doctrine of contributory negligence.[7] The

negligence of the master in failing to comply with the duties imposed by Section 66–301, in order that the servant may recover it must appear that the master knew or ought to have known of the incompetency of the other servant, or of the defects or danger in the machinery supplied; and it must also appear that the servant injured did not know and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof." Georgia Code § 66–303.

4. *See, e. g.*, Atlanta, B. & C. R. Co. v. King, 1936, 55 Ga.App. 1, 189 S.E. 580; International Cotton Mills v. Webb,

1918, 22 Ga.App. 309, 96 S.E. 16; Bush v. West Yellow Pine Co., 1907, 2 Ga. App. 295, 58 S.E. 529; Moore v. Dublin Cotton Mills, 1906, 127 Ga. 609, 56 S.E. 839.

5. *See, e. g.*, Borochoff v. Fowler, 1958, 98 Ga.App. 411, 105 S.E.2d 764; Elliott v. Tifton Mill & Gin Co., 1913, 12 Ga. App. 498, 77 S.E. 667.

6. See Bush v. West Yellow Pine Co., *supra*; Atlanta, B. & C. R. Co. v. King, 1936, 55 Ga.App. 1, 189 S.E. 580.

7. This is watered down somewhat under Georgia's modified comparative negligence concept. Under this rule a negligent

company argues, and the District Court presumably held, that the allegations of Webb's complaint[8] establish, as a matter of law, that Webb acted "rashly,"[9] or at least negligently in such a quality as to deny recovery.

Slippery as are these undulating Georgia principles of some-time momentary shifting liabilities or defenses, the problem is not with the law. The difficulty is that we are asked as Judges to rule as a matter of law that the ladder, once characterized by Webb as "extremely dangerous and unsafe," was so dangerous that no reasonable man could ever conclude that its attempted use could be anything less than "rash". But where do we get these powers of divination? We don't even have a picture of the ladder. And the "word" picture set forth by the scrivener in the pleadings is anything but a revealing one. It is chockfull of conclusory statements. What does the ladder look like? What sort of handholds does it have?

Bear in mind that in the story set forth (and admitted) in the pleadings the employer (Standard) did two things. First, it instructed Webb to continue to use the ladder. Next, it gave assurance that, while the company was looking into possible corrective improvements, the ladder was safe to use. If an employer, under the heavy Georgia duty to provide safe working conditions, takes those steps with an employee, how could a Judge—trial or appellate—say that an employee could not credit the employer's appraisal of the device's relative safety?

All of the issues of liability and defense—partial or complete—are open for factual development to determine what the *facts* are, not what lawyers say they are, or worse, undertake to characterize their legal significance. This is but a reminder that the "reasonable man" is indeed an elusive character, and, as Standard concedes, ordinarily the question of negligence—either primary or contributory—is one for the jury.[10] And unless reasonable men would be compelled to hold Standard not negligent or Webb negligent to a degree denying recovery, the case would have to go to

---

plaintiff may recover unless his negligence is equal to (or greater than) that of the defendant, although damages will be reduced in proportion to the amount of negligence attributable to the plaintiff. Williams v. United States, 5 Cir., 1967, 379 F.2d 719, 722.

  See Georgia Code § 105-603:
  "105-603. Diligence of plaintiff.— If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained."

See also Tyler v. Peel Corp., 5 Cir., 1967, 371 F.2d 788, 791 n. 6; Mixon v. Atlantic Coast Line R. R., 5 Cir., 1966, 370 F.2d 852, 858; Gross v. Southern Ry., 5 Cir., 1969, 414 F.2d 292 [May 30, 1969].

8. Standard relies on the fact that Webb knowingly continued to use a ladder that, according to his allegations, was "extremely dangerous and unsafe."

9. It is not clear from the Georgia cases whether the term "rashness" connotes a form of aggravated negligence, like gross

negligence, or whether the term is simply a reminder that the principles of contributory negligence remain applicable in these cases. For example, in the case of Southern Cotton Oil Co. v. Gladman, 1 Ga. App. 259, 58 S.E. 249, the Georgia Court stated:

  "Of course a servant who rashly exposes himself to a known danger, which common prudence ought to show him could not be encountered without probable injury, cannot recover in case he is thereby injured, even though his conduct be sanctioned or commanded by the master."

See also Louisville & N. R. R. v. Dunn, 1917, 21 Ga.App. 379, 94 S.E. 661. For our purposes here, it is sufficient to assume that "rashness" encompasses the concept of contributory negligence.

10. As Judge Goldberg has so aptly put it: "Negligence is a seldom enclave for trial judge finality. Negligence is a composite of the experiences of the average man and is thus usually confined to jury evaluation." Keating v. Jones Development, Inc., 5 Cir., 1968, 398 F.2d 1011, 1015.

the jury. See Boeing Co. v. Shipman, 1969, 411 F.2d 365 (en banc).

The upshot is that we have decided that what Webb says is so is or may be enough. But this may turn out to have been a sterile exercise. "What will come of this only the facts will tell. It now goes back two years later to find out what they are." Stern, Hays & Lang, Inc. v. M/V Nili, 5 Cir., 1969, 407 F.2d 549, 551.

From both a substantive standpoint and that of judicial administration, what we've earlier said bears repeating:

> "What—and all—we have determined here is that the complaint states a claim under Georgia law and cannot therefore be disposed of on the pleadings. Camilla Cotton Oil Co. v. Spencer Kellogg & Sons, 5 Cir., 1958, 257 F.2d 162, 167; Carss v. Outboard Marine Corp., 5 Cir., 1958, 252 F.2d 690, 691 n. 1; Navigazione Alta Italia v. Columbia Cas. Co., 5 Cir., 1958, 256 F.2d 26, 33; Millet v. Godchaux Sugars, Inc., 5 Cir., 1957, 241 F.2d 264, and especially cases cited p. 265, n. 1. We do not even attempt to intimate what will be the final outcome on remand to the District Court. Chagas v. Berry, 5 Cir., 1966, 369 F.2d 637, 642; Garrett v. American Airlines Inc., 5 Cir., 1964, 332 F.2d 939, 944, 3 A.L.R.2d 930; Millet v. Godchaux Sugars, supra, 241 F.2d at 267. Nor for that matter do we even forecast how far the case will get, and certainly not that there is necessity for a full-blown trial, Smoot v. State Farm Mut. Auto Ins. Co., 5 Cir., 1962, 299 F.2d 525, 534. Indeed, once the matter gets beyond what the lawyers in legalese say the facts are and the Court sees what the real facts are, it may well wash out on summary judgment, Bruce Constr. Corp. v. United States, 5 Cir., 1957, 242 F.2d 873, or if not then, then later on motion for directed verdict after the plaintiff's or all of the evidence is in. River Brand Rice Mills, Inc. v. General Foods Corp., 5 Cir., 1964, 334 F.2d 770, 773."

Tyler v. Peel Corp., 5 Cir., 1967, 371 F.2d 788, 791–792 (footnotes omitted).

Reversed and remanded.

## ON PETITION FOR REHEARING

### PER CURIAM:

The Court's reference to the relationship of employer-employee is intended to describe a relationship and the existence of duties, etc. analogous to that of employer-employee. In all other respects the petition for rehearing filed in the above entitled and numbered cause is hereby denied.