**J. P. (Pat) WEBB, Plaintiff-Appellant,**

v.

**STANDARD OIL COMPANY, Defendant-Appellee.**

**No. 30922.**

United States Court of Appeals, Fifth Circuit.

Oct. 5, 1971.

W. D. (Jack) Knight, Nashville, Ga., Ed. G. Barham, Valdosta, Ga., for plaintiff-appellant.

Kirk McAlpin, A. Felton Jenkins, Jr., Atlanta, Ga., Cam U. Young, Valdosta, Ga., Joseph B. Haynes, Atlanta, Ga., for defendant-appellee; Young, Young & Ellerbee, Valdosta, Ga., King & Spalding, Atlanta, Ga., of counsel.

Before JOHN R. BROWN, Chief Judge and COLEMAN and CLARK, Circuit Judges.

### JOHN R. BROWN, Chief Judge:

When this case was first before this Court and we reversed the preceding dismissal for failure to state a claim,[1] our opinion cautioned "this [remand] may turn out to have been a sterile exercise."[2] Now, two years later and more than six years after Appellant Webbs' fateful fall from a ladder ascending a Standard Oil Company gas storage tank, we find that that prediction was painfully accurate. It is, unfortunately, double proof that the shortest way around is often the longest way through. Accordingly, we affirm the Trial Court's judgment n. o. v. (F.R.Civ.P. 50(b)) after a jury verdict for the Plaintiff.

Having declined to speculate as to the truth or falsity of the allegations contained in the petition, we remanded this case at its earlier appearance before this Court for a full development of the facts, not merely what the lawyers said the facts would be.[3] (Indeed, it was worse than that, since what the lawyers said the facts would be was shrouded in the mystery of conclusory pleading jargon.)

---

1. Webb v. Standard Oil Co., 5 Cir., 1969, 414 F.2d 320.

2. *Id.* at 324.

3. Cf. Barber v. M/V Blue Cat, 5 Cir., 1962, 372 F.2d 626, 629; Cook & Nichol, Inc. v. Plimsoll Club, 5 Cir., 1971, 451 F. 2d 315.

The wisdom of that course—though admittedly it resulted in a delay in concluding the case and an extra burden on this and the Trial Court—is borne out by the fact that the evidence presented at trial portrays a substantially different picture—or more accurately, discloses a more full, factual picture—than that depicted by the allegations of the complaint, necessarily assumed to be true before.[4]

Now that all the facts are in, including revealing, indisputable photographs, we find that that description, based on the assumption that all allegations of the complaint are true, omits or distorts certain important aspects of the overall factual setting.

(i) The stay posts were not too large to be grasped by a man's hand, but rather the *side rail* was "almost too big to grasp that side with the hands." This is material because Plaintiff's customary procedure for ascending the ladder was "fireman style," that is, by holding onto the rungs, not the side rail.

(ii) Unmentioned in the complaint is the fact that Plaintiff was carrying a tape measure in one hand as he climbed the ladder on the occasion of the accident.

(iii) Standard Oil's "assurances" that the ladder would be repaired, allegedly given some 30 to 45 days before the accident, turns out to have been merely the casual remark of one of Standard Oil's auditors that "I'll see if I live long enough that we get this corrected for you."

(iv) Even if that statement could somehow be construed as a promise, there was no reasonable basis for reliance, because—the fully developed facts indicate—Plaintiff had been requesting and (on his own story) Standard Oil had been "promising" alteration of the ladder since 1949—some 16 years before the asserted "assurance" on which detrimental reliance is claimed.

(v) A vitally important link in the chain of evidence, but understandably missing from Plaintiff's complaint is the fact that the length of time Plaintiff had been using the ladder in question was 24½ years—and for 20 years he had been climbing it at least once a week.

When all these embellishments are added to the scene, we obtain an entirely different view—one with which we, as did the Trial Judge, are compelled to conclude, reasonable and fair-minded men in the exercise of impartial judgment could not fail to agree.

Only the "successive contentions and counter contentions of the parties"[5] on theories advanced, resisted by exceptions to the general rule, and re-resisted by exceptions to the exceptions,[6] obscure

---

4. The allegations of the complaint were summarized by us before as follows:

Webb was a "commissioned agent" for the sale of Standard's products, and one of his duties was to measure the number of gallons of petroleum products required to fill a particular perpendicular type tank located at Standard's bulk plant. The tank was approximately 30 feet tall, and in order to make the required measurement, Webb had to climb a steel ladder constructed of metal rungs welded to pieces of angle iron. The angle iron forming the stay posts of the ladder was too large to be grasped by a man's hand, and there were no handrails, guardrails, landing or other protective devices attached to the ladder. In June 1965, while performing his duty to measure the amount of product in the tank, Webb was climbing the ladder at a point 20 to 30 feet above the ground when he fell and sustained severe physical injuries.

Webb had from time to time complained to Standard's agents that the ladder was unsafe. In response, these agents had assured Webb that the company had under study and consideration changes that would lessen the dangers attendant to the use of said ladder and had instructed him to continue to use it until the changes and safety devices could be installed.

414 F.2d at 321.

5. Webb v. Standard Oil Co., *supra*, 414 F. 2d at 321.

6. These undulating, bouncing ball theories are developed in Webb v. Standard Oil Co.,

the simplicity of this case in its now fully revealed substance. Quite naturally, the parties devote much attention in their briefs to characterizing the relationship between Plaintiff and Standard Oil in familiar legal jargon. Standard Oil urges that its duty was that of a principal to his agent or a landowner to his invitee. Plaintiff, in his attempt to describe the relationship, suggests some *quasi* master-servant theory to control.

 We are of the opinion that it is not necessary to light upon any specific characterization,[7] for no matter what label we attach to the relationship, there was no breach of Georgia duty[8] to one who weekly, for 20 years, voluntarily undertook what he described as a very dangerous activity, continually averting to the hazards of his adventure, knowing directly of the risks and the decades of unfilled promises of correction. When one day—predictably and predicted—he is felled by the peril he knowingly flouted and tempted so long, he must bear the loss.

 Even if we characterize the relationship in the light most favorable to Plaintiff and heed his urging that some *quasi* master-servant theory controls this case,[9] his actions with full knowledge of the dangers and after realizing that Standard Oil's assurances of correction could not be relied on, constituted a bar to recovery, for they made out a case of Georgia assumption of the risk, exceptions to the general rule and exceptions to the exceptions notwithstanding. In a sort of "juridical *vingt-et-un*"[10] Plaintiff opened with Georgia Code Section 66–301,[11] to establish a duty on Standard Oil to provide equipment reasonably safe for all persons who operate it with diligence. Standard Oil countered with Georgia Code Section 66–303[12]—assumption of risk by servants—which exculpates the master from

supra, 414 F.2d at 321–322, n. 2–9 and related text.

7. If we had determined that the relationship was landowner-invitee or principal-agent, the duty of Standard Oil would be satisfied when Plaintiff had knowledge of the defect or danger equal to that of Standard Oil. Green v. Reynolds Metals Co., 5 Cir., 1964, 328 F.2d 372; McGeeney v. Robertson, 1960, 102 Ga.App. 318, 116 S.E.2d 252; Taff v. Harris, 1968, 118 Ga.App. 611, 164 S.E.2d 881. That Plaintiff's knowledge of the danger was at least equal to that of Standard Oil was established beyond any peradventure of doubt and is not contested by Plaintiff.

8. The *Erie* light in this diversity action is, of course, Georgia law.

9. Plaintiff does not argue, indeed he stipulated to the contrary, that the relationship of the parties was actually that of master-servant. Rather he contends that the connection between the parties was so similar to traditional master-servant concepts, that that standard should control our disposition. Without deciding the correctness of that theory we assume *arguendo* that master-servant law applied —at least by analogy—and we still conclude that Plaintiff cannot prevail. See Webb v. Standard Oil Co., On Petition For Rehearing, 5 Cir., 1969, 414 F.2d 324.

10. Webb v. Standard Oil Co., *supra*, 414 F. 2d at 321.

11. "Care required of master; warning to servants of defects or dangers.—The master is bound to exercise ordinary care in the selection of servants, and not to retain them after knowledge of incompetency; he shall use like care in furnishing machinery equal in kind to that in general use, and reasonably safe for all persons who operate it with ordinary care and diligence. If there are latent defects in machinery, or dangers incident to an employment, unknown to that servant, of which the master knows or ought to know, he shall give the servant warning in respect thereto."

12. "Assumption of risks by servants. Lack of knowledge of defects or dangers.—A servant assumes the ordinary risks of his employment, and is bound to exercise his own skill and diligence to protect himself. In suits for injuries arising from the negligence of the master in failing to comply with the duties imposed by section 66–301, in order that the servant may recover it must appear that the master knew or ought to have known of the incompetency of the other servant, or of the defects or danger in the machinery sup-

§ 66–301 liability where the servant has knowledge of the defect or danger. Plaintiff responded with an exception to that exception—if the servant points out the danger to the master and the master orders the servant to pursue the dangerous activity anyway, the master is liable for any injury which results. Bush v. West Yellow Pine Co., 1907, 2 Ga.App. 295, 58 S.E. 529. But Standard Oil still had its turn to draw, and did so by invoking an exception to the exception to the exception—if the facts are such that the servant cannot reasonably rely on the "assurances" of the master, the servant must bear the loss from injury resulting from obvious dangers, despite the fact that his actions were sanctioned by the master. Elliott v. Tifton Mill & Gin Co., 1913, 12 Ga. App. 498, 77 S.E. 667; Borochoff v. Fowler, 1958, 98 Ga.App. 411, 105 S.E. 2d 764.

So even if we adopt the standard most favorable to Plaintiff and press it to the greatest extreme, Plaintiff cannot prevail, for Standard Oil fulfilled its duty under Georgia law. If—as sought by the Plaintiff—he had the benefits of a *quasi* master-servant status, he has to take the burden with the benefit in the form of assumption of the risk or some theory analogous to it. And that result, though established some 60 years ago, would still obtain in Georgia courts, as the recent Georgia Court of Appeals case of Yankey v. Battle, 1970, 122 Ga. App. 275, 176 S.E.2d 714 demonstrates. In that case, a domestic servant fell down a darkened flight of stairs in her employer's home. Although the Plaintiff had informed the employer of the defective lighting and had received assurances that corrective action would be taken and despite the fact that use of the unsafe stairway was necessary to reach the restroom which Plaintiff was required to use, the Georgia Court refused to hold the employer liable and reversed the Trial Court's failure to grant summary judgment for Defendant, stating:

"One who voluntarily takes a risk of physical injury, the danger of which is so obvious that the act of taking the risk, in and of itself, amounts to a failure to exercise ordinary care and diligence for his own safety, cannot hold another liable. Southland Butane Gas Co. v. Blackwell, [1955] 211 Ga. 665, 88 S.E.2d 6. It is not in dispute that plaintiff knowingly entered the stairway while it was in a darkened condition. This is a clear and undisputable case of voluntary assumption of the risk which precludes any recovery by plaintiff. See Mattox v. Atlanta Enterprises, Inc., [1955], 91 Ga.App. 847, 87 S.E.2d 432."

176 S.E.2d at 714.

With Georgia Courts denying recovery in that unquestionably master-servant context, despite the "heavy Georgia duty to provide safe working conditions,"[13] there is no basis for distinction and thus no justification for a different result under Georgia law in this less sharply defined relationship.

■ Having reached that substantive conclusion, there can be no question of the propriety or rendering a judgment notwithstanding the verdict after the jury verdict for Plaintiff. That we had reversed the dismissal for failure to state a claim or that the Trial Court, out of an abundance of caution, perhaps in response to our earlier mandate that a full factual development was necessary, had allowed the case to go to the jury, cannot preclude testing the adequacy of the evidence under *Boeing*[14] either on motion for judgment n. o. v. or reversal and rendition on appeal. Judge Ainsworth has fully developed this approach

---

plied; and it must also appear that the servant injured did not know and had not equal means of knowing such fact, and by the exercise of ordinary care could not have known thereof."

13. Webb v. Standard Oil Co., *supra*, 414 F. 2d at 323.

14. Boeing Co. v. Shipman, 5 Cir. (en banc), 1969, 411 F.2d 365.

for us in Gross v. Southern Railway Co., 5 Cir., 1971, 446 F.2d 1057. Indeed, we predicted just such a possibility in remanding the case.[15]

 We therefore apply the *Boeing* test to determine whether or not the motion for judgment n. o. v. should have been granted. "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. \* \* \* There must be a conflict in substantial evidence to create a jury question." 411 F.2d at 374–375.

Once the facts were in, there was no more conflict. It was undisputed that Plaintiff had been climbing the ladder in question regularly and been receiving half-hearted indications that its improvement was under consideration for some 20 years. The conclusion was inescapable that Plaintiff was fully aware— equally as much if not more so than Standard Oil—of the dangers he was voluntarily undertaking, the perils he was knowingly risking, the possible tragic consequences he was inviting and the two decades of unfilled assurances of correction.

Under Georgia substantive principles, even in the legal light most favorable to Plaintiff, there was nothing to present to the jury. So now, six years and too many agonizing court battles later, this case can finally be laid to rest.

Affirmed.

---

15. "What—and all—we have determined here is that the complaint states a claim under Georgia law and cannot therefore be disposed of on the pleadings. \* \* \* We do not even attempt to intimate what will be the final outcome on remand to the District Court. \* \* \* Nor for that matter do we even forecast how far the case will get, and certainly not that there is necessity for a full-blown trial. \* \* \* Indeed, once the matter gets beyond what the lawyers in legalese say the facts are and the Court sees what the real facts are, *it may well wash out on summary judgment,* \* \* \* *or if not then, then later on motion for directed verdict after the plaintiff's or all of the evidence is in.* River Brand Rice Mills, Inc. v. General Foods Corp., 5 Cir., 1964, 334 F.2d 770, 773." 414 F.2d at 324 (emphasis supplied).